2002 WY 157

**W. Tom DAVIS, Trustee of the Doyle F. Child Family Living Revocable Trust dated June 1, 1992, Appellant (Plaintiff),**

v.

**Russell CHADWICK, a single man, Alan Chadwick and Denise Chadwick, husband and wife, Appellees (Defendants).**

No. 02–2.

Supreme Court of Wyoming.

Oct. 18, 2002.

Ted C. Frome of Afton, Wyoming, Representing Appellant. Argument by Mr. Frome.

John D. Bowers of Bowers Law Office, P.C., Afton, Wyoming, Representing Appellees. Argument by Mr. Bowers.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] W. Tom Davis (Appellant), as trustee of the Doyle F. Child Family Living Revocable Trust, appeals an order of the district court quieting title in approximately

* Chief Justice at time of oral argument.

.36 acres in Russell, Alan, and Denise Chadwick (Appellees). The land in dispute has been enclosed with Appellees' land since the initial construction of a fence on the property over 50 years ago. The district court rejected Appellant's claim that the fence was one of convenience and quieted title in Appellees on the basis of adverse possession. After carefully reviewing the record, we affirm.

## ISSUES

[¶ 2] Appellant sets forth two issues in his brief:

*Issue No. 1:*

Did the Defendants prove all of the elements of adverse possession where they rely on grazing to establish their claim?

*Issue No. 2:*

Did the trial court err when it determined the fence was not a fence of convenience?

Appellees rephrase the issues slightly:

ISSUE NO. 1:

Was there sufficient evidence presented at trial for the court to find that the Defendants have proven all of the elements of adverse possession regarding the disputed property?

ISSUE NO. 2:

Was there sufficient evidence for the trial court to find that the fence separating the disputed property was not a fence of convenience?

## FACTS

[¶ 3] This is a dispute over the ownership of land located in the Town of Afton. The parties are adjoining landowners. The area in controversy has been enclosed with lands owned by the Appellees and their predecessors in interest since the fence was initially constructed over 50 years ago. Appellant has paid taxes on all the property contained within his deed, which includes the contested parcel. Historically, the parties have allowed the Town of Afton to temporarily remove the fence along the disputed area during the winter months. The Town uses the property as a recreational area for winter sports including skiing, snowmobiling, and sledding.

[¶ 4] The discrepancy between the fence line and the property line came to light in August of 1997 when Appellant commissioned a survey. The fence is about 429 feet in length and runs in a straight line. It is 23 feet west of the survey line on the north and 49½ feet west of that line on the south end. The fence is located on relatively flat ground that gradually increases in elevation from north to south. Constructing a fence on the survey line would be slightly more difficult and expensive due to a hill that rises steeply east of the fence line. The fence, as it existed, resulted in about .36 acres of Appellant's property being enclosed within Appellees' land. Until the survey, the parties had assumed the fence was on the true property line.

[¶ 5] The existing fence line continues south beyond the property boundary between the parties and separates Appellees' land from those of other owners. The fence runs in a straight line from the disputed property over a hill with an incline even steeper than the hill to the east of the disputed property. This fence also does not follow the true property line.

[¶ 6] Appellant filed an action to quiet title in the disputed property. The Appellees countered with a claim for adverse possession.[1] The matter proceeded to a bench trial before the district court. Appellant contended that the fence was one of convenience, and that Appellees' adverse possession claim should fail because their possession of the disputed land was not exclusive in light of the Town's use during the winter months. Appellees denied the fence was one of convenience and asserted that the elements of adverse possession had been met. They provided evidence that the disputed property had been used for the grazing of cattle and/or horses since at least 1957[2] whenever vegetation and moisture conditions allowed.

---

1. The Appellees also filed a claim for acquiescence. The district court denied that claim, and Appellees have not cross-appealed.

2. The district court's decision letter cites 1947 as the date. This is clearly a typographical error since the testimony referred exclusively to 1957. Since the Appellees possessed the land in ques-

[¶ 7] The district court concluded that Appellees had met their burden and demonstrated adverse possession of the disputed area. The court found that allowing the Town of Afton to use the property during the winter months did not negate the exclusivity element because the Town was acting as the Appellees' agent. The court also concluded that Appellant had failed to negate the showing of adverse possession by a showing that the fence was one of convenience. Specifically, the court noted that the fence ran in a straight line past the disputed area up a steep grade on a hill and was not on the true property line separating Appellees' land from the other adjoining owners. The court also noted that all of the parties believed that the fence was the true boundary until the survey. Based on these facts, the district court concluded that the fence was not one of convenience and quieted title to the disputed parcel in Appellees. Appellant now challenges that ruling before us.

## STANDARD OF REVIEW

[¶ 8] When a trial court has made express findings of fact and conclusions of law in a bench trial, we review the factual determinations under the clearly erroneous standard and the legal conclusions de novo. *State v. Campbell County School District*, 2001 WY 19, ¶ 41, 19 P.3d 518, ¶ 41 (Wyo. 2001) (quoting *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Campbell County School District*, ¶ 41 (citing *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo.1993)). In the alternative: "[A] determination that a finding is against the great weight of the evidence means a finding will be set aside even if supported by substantial evidence." *Id.*

## DISCUSSION

[¶ 9] In *Hillard v. Marshall*, 888 P.2d 1255 (Wyo.1995), we set out in detail the

legal framework of adverse possession and fences of convenience:

In order to establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile and under claim of right or color of title. *Rutar Farms & Livestock, Inc. v. Fuss*, 651 P.2d 1129, 1132 (Wyo.1982); *City of Rock Springs v. Sturm*, 39 Wyo. 494, 502, 273 P. 908, 910 (1929). Possession must be for the statutory period, ten years. W.S. 1-3-103(1988); *Connaghan v. Eighty-Eight Oil Co.*, 750 P.2d 1321, 1323 (Wyo. 1988); *Doenz v. Garber*, 665 P.2d 932, 935 (Wyo.1983). Where there is no clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession; and the burden shifts to the opposing party to explain such possession. *Meyer v. Ellis*, 411 P.2d 338, 342 (Wyo.1966) (*quoting City of Rock Springs v. Sturm*, 39 Wyo. at 517, 273 P. at 915-16). However, if a claimant's use of the property is shown to be permissive, then he cannot acquire title by adverse possession. *Ellis*, 411 P.2d at 344 (*quoting Johnson v. Szumowicz*, 63 Wyo. 211, 228-29, 179 P.2d 1012, 1017 (Wyo. 1947)).

In some circumstances, enclosing land in a fence is sufficient to "raise the 'flag' of an adverse claimant." *Ellis*, 411 P.2d at 343; *Doenz*, 665 P.2d at 936 (presence of fence and continuing farm operations put record landowners on notice of adverse claim). The pasturing of animals within a substantial enclosure is sufficient to establish the elements of adverse possession. *Farella v. Rumney*, 649 P.2d 185, 186-87 (Wyo.1982) (*quoting Shores v. Lindsey*, 591 P.2d 895, 902 (Wyo.1979)). However, a fence kept only for the convenience of the parties or to separate pastures or irrigated meadows from grazing lands has no effect on the true boundary between tracts. *Sowerwine v. Nielson*, 671 P.2d 295, 297 (Wyo.1983); *State v. Vanderkoppel*, 45 Wyo. 432, 439, 19 P.2d 955, 957 (Wyo.1933).

---

tion at least from 1957 until the 1997 survey, the discrepancy is not material to Appellees' claim in

light of the ten-year possession requirement for adverse possession.

. . . .

... [In] the context of adverse possession, a presumption arises in favor of the claimant when a *prima facie* case has been made, requiring a conclusion in favor of adverse possession absent explanation. Similarly, it could be said that a presumption in favor of the record title holder exists, unless and until the adverse claimant makes out his *prima facie* case, because the initial burden of proof is on the party claiming adverse possession. *Sowerwine,* 671 P.2d at 302; *Miller v. Bell,* 764 P.2d 389, 390 (Colo.App.1988) ("An initial presumption favors the record title holder as against the adverse possession claimant."); *Accord Gonthier v. Horne,* 576 A.2d 745 (Me.1990); *Miceli v. Foley,* 83 Md. App. 541, 575 A.2d 1249 (1990). Once the adverse possession claimant has made out his *prima facie* case, and absent any explanatory circumstances to the contrary, the burden shifts to the opposing party to produce evidence contrary to the presumption. *Sturm,* 39 Wyo. at 517, 273 P. at 915–16; *Turner v. Floyd C. Reno & Sons, Inc.,* 769 P.2d 364, 368 (Wyo.1989); *accord Szombathy v. Shell Oil Co.,* 676 S.W.2d 15, 18 (Mo.App.1984).

888 P.2d at 1258–60; *see also Hovendick v. Ruby,* 10 P.3d 1119, 1122–23 (Wyo.2000) and *Kimball v. Turner,* 993 P.2d 303, 305–06 (Wyo.1999).

■ [¶ 10] Appellant begins by challenging the district court's conclusion that Appellees had established adverse possession. First, Appellant claims that the trial court adopted an improper legal standard in its findings and conclusions by not including the requirements that the grazing on the disputed tract was for the entire growing season and within a substantial enclosure. Further, Appellant contends that there is no substantial evidence in the record to support a finding that Appellees did graze during the growing season or that the grazing was within a substantial enclosure. Specifically, Appellant asserts that there was no testimony as to the numbers grazed and the period of time during the year when they were grazed. Regarding the substantial enclosure requirement, he argues that there was no evidence establishing the extent of the area enclosed by the fence, the nature of the fence, or whether or not it was even capable of containing livestock.

■ [¶ 11] We have recognized that adverse possession can be established by the pasturing of livestock during the growing season within a substantial enclosure. *Farella v. Rumney,* 649 P.2d 185, 186–87 (Wyo. 1982). A person who claims adverse possession based on the grazing of livestock does not have to demonstrate continuous pasturing throughout the year; rather, dominion and control is established when land suitable for grazing and pasturage is occupied and used as such during the full period of the growing season. *Shores v. Lindsey,* 591 P.2d 895, 900 (Wyo.1979). Appellees provided testimony that each summer since 1957 they had grazed up to half a dozen horses or cattle on the disputed property so long as vegetative and weather conditions permitted. The testimony indicated that the number of livestock grazed on the disputed property was the maximum that could be supported without damaging the pasturage. The district court specifically cited this testimony in its decision letter. Appellant's contention that the court did not properly recognize the extent of Appellees' grazing or that there was no evidence to support a finding that the grazing did not fully utilize the disputed property is without merit.

■ [¶ 12] We disagree with Appellant's characterization of the meaning of the term "substantial enclosure." While we have cited that term as a requirement for the adverse possession of land by pasturing, we have not defined it. *See Hillard,* 888 P.2d at 1259; *Farella,* 649 P.2d at 186–87; and *Shores,* 591 P.2d at 902. The term "substantial enclosure" does not refer to the area enclosed by a fence. Instead, we use the term to refer to the extent and nature of the enclosure of the disputed property. In other words, the term "substantial enclosure" means whether or not the land adversely claimed is enclosed in a manner that puts the title owner on notice of the adjoining landowners' adverse claim of ownership and the extent of that claim (*i.e.,* over what specific lands the adverse claimant is asserting own-

ership). One authority has explained the term "substantial enclosure" in this fashion:

> To constitute the basis for an adverse possession claim, a claimant's enclosure should be appropriate for the purposes to which the premises are adapted, or for which the occupant may desire to use them.
>
> > **Observation:** The adequacy of an enclosure may be affected by statutory requisites in some states. For example, under a statutory requirement that a fence must be substantial to support a claim of adverse possession, the court must look to the whole fencing pattern and the use made of the fence, as well as all other facts and circumstances.
>
> If an enclosure is essential or is relied on as the evidence of possession, it must, to be effective, be complete and so open and notorious as to charge the owner with knowledge of it. The basic question is whether the enclosure, like other acts of possession, is sufficient to "fly the flag" over the land and put the true owner on notice that the property is held under an adverse claim of ownership. This rule is applicable if a fence or a hedgerow or the like is relied on to delineate the boundaries of the adverse claim; even if it is insufficient to turn livestock, a fence may be sufficient to "fly the flag" and put the owner on notice of adverse possession. In fact, an enclosure having no purpose of physical exclusion may be sufficient to indicate the boundaries of an adverse claim even though it is only a mere furrow turned with a plow around the land, or a line marked by cutting away the brush.
>
> Constructing a fence and using the enclosed land for grazing constitutes adverse possession, even if the fence is not maintained in a perfect state of repair.

3 Am.Jur.2d *Adverse Possession* § 38 (2002). While we do not delineate the scope of what would constitute a "substantial enclosure" sufficient to indicate the boundaries of an adverse claim today, there is no question that the fence in this case was sufficient to "fly the flag" and put Appellant on notice of Appellees' claim. By his own admission, Appellant believed the fence demarcated the property line between the parties. Likewise, there is no question in this case over what land is claimed by Appellees based on the location of the fence. The evidence showed that although the fence deteriorated over the years, it was still sufficient to allow Appellees to engage in grazing operations on the disputed parcel. Therefore, the "substantial enclosure" requirement was met in this case, and Appellant's claim must fail.

[¶ 13] Appellant raises two more claims challenging the district court's adverse possession decision. First, he contends that grazing was not the best use of the disputed property. Appellant insists the best use was housing or recreation. We have stated that the general principle underlying adverse possession cases is that "the acts of dominion must be adapted to the particular land, its condition, locality and appropriate use." *Shores*, 591 P.2d at 900 (quoting *Brumagim v. Bradshaw*, 39 Cal. 24, 46 (1870)). Appellant's claim is undercut by his admission at trial that the use of the land for grazing was the common use for that type of property in that part of Wyoming. In conjunction with Appellant's admission and the testimony from Appellees that the land was suitable for grazing, we can only conclude that grazing activities on the disputed parcel were an appropriate use sufficient to assert dominion over the land for the purposes of adverse possession.

[¶ 14] Next, Appellant argues that Appellees' possession of the disputed land did not satisfy the exclusivity element of adverse possession. Appellant relies on the Town of Afton's use of the disputed property during the winter months for public recreation. For the past 30 years the Town of Afton has, with the permission of both parties, temporarily removed about half of the disputed fence from early November to early May to allow the public access to skiing, snowmobiling, and sledding on the hill. The district court concluded that the permissive use by the Town of Afton did not negate the exclusive and continuous possession of the disputed land by Appellees. In essence, the court concluded that the Town was simply acting as Appellees' agent. Appellant counters that since he was the record title owner

of the disputed land, only he had the authority to lease or grant use of the property to a third party, and that the Town, as a tenant of Appellant, took occupancy of the area in controversy interrupting Appellees' exclusive and continuous possession of the land.

[¶ 15] In support of its conclusion, the district court cited *Nelson v. Vandemarr*, 281 Or. 65, 573 P.2d 1232 (1978). In that case, the plaintiffs used a portion of the defendants' land as a driveway. The parties believed the driveway was on plaintiffs' land and, on occasion, the defendants would use the driveway with the plaintiffs' permission to prune some trees that grew on the defendants' property. The defendants claimed their use of the driveway negated the exclusiveness of the plaintiffs' possession. The Oregon Supreme Court replied:

We have held that "exclusive" does not mean absolutely exclusive, but only such use as would be "expected of an owner under the circumstances." [*Grimstad v. Dordan*, 256 Or. 135, 141, 471 P.2d 778, 781 (1970).] Allowing a neighbor on one's driveway for the purpose of pruning trees is just the sort of use one would expect. Therefore, this evidence does not negate the element of exclusiveness. In *Norgard et al. v. Busher et ux.*, 220 Or. 297, 308, 349 P.2d 490, 496 (1960), a case similar in aspects, we stated, "The claimants' possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use." We therefore find, as did the trial court, that plaintiff's continuous and open use of the area described as the driveway was sufficient to make out a title by adverse possession in plaintiffs.

*Nelson*, 573 P.2d at 1237. We agree with the Oregon Supreme Court and the district court. The Town of Afton used the land in question with the permission of both parties. If Appellees had denied permission prior to the survey in 1997, there appears to be little question that the Town could not have set up the recreation area. Appellees acted exactly as one would expect the owner of the land in question to act. Therefore, like the plaintiffs in *Nelson*, Appellees' continuous and open

use of the disputed parcel was sufficient to make out a title by adverse possession.

[¶ 16] In his final argument, Appellant contends that the district court erred when it found the fence was not one of convenience. To set the context for our review of Appellant's claim, we set out the district court's findings:

The plat of the Kennington Trust ... shows the true boundary line continuing in a southerly direction past the area in controversy between the Plaintiff [Appellant] and the Defendants [Appellees]. Said plat also shows the existing fence line continuing in a southerly direction, and west of the true boundary line, beyond the area in controversy between the Plaintiff and the Defendants. As stated above, the southerly continuation of this existing fence separates additional land of the Defendants from property of another adjoining land owner. According to the plat, this portion of the fence also does *not* follow the true property line. Said fence does continue up the steep grade of a hill in a direction that would not be convenient. Clearly, building that fence further to the west would have been more convenient.

There is no evidence as to exactly who built either section of fence. As stipulated fact # 4 above indicates as far as is known, the parties' predecessors in interest, either together or separately, built the fence in the area in controversy. Given the evidence presented to this Court it appears just as likely that the Defendants, or their predecessors in interest, may have constructed the additional portion of fence that continues in a southerly direction past the area in controversy between this Plaintiff and the Defendants. If all of the fence had been constructed for the convenience of the parties given the terrain, then it appears clear that the fence would not have continued in a straight line in a southerly direction. The fence is indeed in a straight line from the northern end of the area in controversy to the southern end of the fence where it takes a 90 [degree] turn to the east beyond the area in controversy between these parties. The fence does not

deviate from that straight line because of topography.

All parties testified that up until the survey of August of 1997 everyone believed the fence constituted the true boundary line between the parties. This is further support for a finding that the fence was constructed by either the parties, or their predecessors in interest, on what they believed to be the true boundary line and not as a fence of convenience.

In the [*Kimball v. Turner*, 993 P.2d 303 (Wyo.1999)] case, the District Court also found the fence involved to be one of convenience. The Court found that the physical appearance of the fence clearly demonstrated that it could not have been constructed as a boundary fence. The fence meandered between trees, bushes, and fence posts in an irregular fashion. The Court indicated that the irregular course of the fence clearly indicates that it was not constructed on a section line, a quarter section line or any other line of a U.S. Governmental subdivision parcel. Again, the evidence in this case is to the contrary. The fence is constructed in a straight line. It does not meander between trees, bushes, and fence posts in an irregular fashion. The straight line of the fence indicates that the fence was constructed as a boundary. The straight fence would be consistent with its construction on line with a U.S. governmental subdivision parcel. The Plaintiff has failed in his burden of producing evidence of any explanatory circumstances contrary to the presumption of adverse possession in favor of the Defendants created upon their establishment of a prima facie case. The Court finds the existing fence to be [a] boundary fence and not one merely of convenience.

Appellant takes issue with the district court's conclusions. Appellant argues that a fence situated on the true property line would have been more difficult to build and maintain because of the existence of the hill to the west of the existing fence line. He also notes that the fence runs south in order to intersect the Appellees' south boundary fence and that building the fence on the true property line would have accomplished that. Appel-lant insists that it makes more sense to believe that the fence was constructed where it was because the builders realized that it would be easier to build and maintain the fence there and because livestock would not have to walk over the hill to reach water. In other words, the fence was built as it was because of convenience. Appellees counter that Appellant has made assumptions not supported by the record. According to Appellees, the key consideration is the fact that the parties, including Appellant, have historically treated the fence as the true boundary line.

[¶ 17] The question of whether or not a fence is one of convenience or delineates a boundary is one of fact. *Kimball*, 993 P.2d at 305. After a careful review of the record, we conclude that the district court's findings and conclusions are not clearly erroneous. The only evidence in support of Appellant's position is the testimony that building the fence on the boundary line would entail more labor and financial expense because of a steep hill. However, neither the additional labor nor the cost of materials would have been prohibitive. Furthermore, a witness for Appellant testified that he had never seen anyone put a fence of convenience in a similar location when the true boundary was known. Another witness testified that it would have been easier to build the fence elsewhere and that the existing fence appeared to constitute a boundary. This evidence, taken in consideration with the nature of the existing fence as noted by the district court and the fact that all parties believed the fence was the true boundary for at least 40 years, does not leave us with a "definite and firm conviction that a mistake has been committed" by the district court. Accordingly, we must affirm the district court's decision.

## CONCLUSION

[¶ 18] The evidence in the record supports the district court's order quieting title in the disputed property in the Appellees, based on adverse possession. The determination that Appellant had failed to meet his burden to demonstrate that the fence was

one of convenience was not clearly erroneous.
The district court's decision is affirmed.