2010 WY 5

Gerald D. HUTCHINSON, Trustee of the Vera J. Hutchinson Revocable Trust Dated October 28, 1999, Appellant (Plaintiff),

v.

Cara J. TAFT, Trustee of the Taft Living Trust Dated August 19, 1983, and Barbara Jo Harney Cockrell and Roberta Anne Harney Causey, co-Executrices of the Estate of Leon Thomson Harney, Appellees (Defendants).

Gerald D. Hutchinson, Trustee of the Vera J. Hutchinson Revocable Trust Dated October 28, 1999, Appellant (Plaintiff),

v.

Cara J. Taft, Trustee of the Taft Living Trust Dated August 19, 1983, and Barbara Jo Harney Cockrell and Roberta Anne Harney Causey, co-Executrices of the Estate of Leon Thomson Harney, Appellees (Defendants).

Nos. S–09–0028, S–09–0067.

Supreme Court of Wyoming.

Jan. 14, 2010.

Representing Appellant in Case No. S–09–0028: Matthew H. Romsa, John M. Kuker and James M. Peterson of Romsa & Kuker, LLC, Cheyenne, Wyoming. Argument by Mr. Romsa.

Representing Appellees in Case No. S–09–0028: James R. Salisbury of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Gerald D. Hutchinson's predecessors in interest (the Hutchinsons) leased property owned by Josephine Taft. After leasing the property for about ten years, the Hutchinsons ceased making the lease payments but continued to use the property. When a trustee of the Taft Living Trust and co-executrices of the estate of one of Josephine Taft's heirs (the Tafts) later listed the Taft property for sale, the Hutchinsons filed a claim to quiet title to the property in them on the theory of adverse possession.

[¶ 2] During a trial to the court, the Hutchinsons presented their witnesses and rested. The Tafts moved for judgment on partial findings. The district court granted the motion and entered a judgment and order for the Tafts. On appeal, the Hutchinsons claim the district court erred in granting the motion for judgment on partial findings, denying admission of an exhibit

and denying their motions to amend the findings or for a new trial. We affirm.

## ISSUES

[¶ 3] The Hutchinsons present the issues for this Court's review as follows:

I. Did the Trial Court [err] in granting Appellees' Rule 52(c) motion?

II. Did the Trial Court [err] in denying admission of Appellant's Exhibit 9?

III. Did the Trial Court [err] in denying Appellant's motion to amend the findings and motion for a new trial?

Although stated differently, the Tafts present essentially the same issues.

## FACTS

[¶ 4] Josephine Taft took title to the Taft property in 1931. Darrold and Vera Hutchinson purchased the Hutchinson property in 1961. The Hutchinson property surrounds the Taft property on the north, east and south sides. The same year the Hutchinsons purchased their property, they entered into a lease agreement with Josephine Taft in which they agreed to pay her $50 per year in exchange for use of her property. From that time forward, the Hutchinsons used the Taft property primarily for grazing and some farming.

[¶ 5] Josephine Taft died in 1967 and her two heirs inherited the property as tenants in common. The Hutchinsons continued to use the Taft property and paid the rent until the early 1970s. Between 1970 and 1975, they stopped paying the rent but continued to use the property.

[¶ 6] In 1992, Darrold Hutchinson conveyed his interest in the Hutchinson property to his wife, Vera, who later conveyed all of the property to Gerald Hutchinson, trustee of the Vera J. Hutchinson Revocable Trust. In 1996, Josephine Taft's heirs died, and their respective interests in the Taft property were distributed to their spouses, Cara J. Taft and Leon Thomson Harney. Through these deaths and conveyances, the Hutchinsons, and their third party lessees, continued to use the Taft property primarily for grazing and some farming.

[¶ 7] In July of 2003, the Tafts listed their property for sale. The Hutchinsons filed a complaint to quiet title to the property in them, claiming they had adversely possessed the property since the early 1970s when they stopped paying rent. The Tafts denied the claim. Both parties filed motions for summary judgment. The district court denied the respective motions and set the matter for a bench trial.

[¶ 8] On the day of trial, the parties presented opening statements and the Hutchinsons presented their witnesses and rested their case. The Tafts moved for judgment on partial findings pursuant to W.R.C.P. 52(c), which provides:

(c) *Judgment on partial findings.*—If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. That party against whom entry of such a judgment is considered shall be entitled to no special inference as a consequence of such consideration, and the court may weigh the evidence and resolve conflicts. Such a judgment shall be supported by findings as provided in subdivision (a) of this rule.

In support of the motion, the Tafts asserted the Hutchinsons had not shown that their possession of the Taft property was adverse. After hearing argument from both parties, the district court granted the motion.

[¶ 9] The district court subsequently entered a judgment and order containing findings of fact and conclusions of law in accordance with Rule 52(c). The Hutchinsons filed motions for a new trial pursuant to W.R.C.P. 59 and for amendment to the district court's findings or additional findings. After a hearing, the district court denied the motions. The Hutchinsons timely appealed the district court order to this Court.

## DISCUSSION

### 1. Order Granting Motion on Partial Findings

[¶ 10] The Hutchinsons contend they met their burden of showing adverse possession; therefore, the district court erred in granting the Rule 52(c) motion. Citing *Kimball v. Turner*, 993 P.2d 303 (Wyo.1999) and *Davis v. Chadwick*, 2002 WY 157, 55 P.3d 1267 (Wyo.2002), they assert that they were required to show, and did show, that from the early 1970s when they stopped paying rent to the present their possession of the Taft property was actual, open, notorious, exclusive, continuous, hostile and under claim of right or color of title. Furthermore, the Hutchinsons assert they proved that they enclosed the Taft property in a fence and that evidence alone was sufficient under Wyoming law to establish adverse possession.

[¶ 11] The Tafts respond that the district court correctly granted their motion because the Hutchinsons did not prove their use of the property was adverse, rather, the evidence showed that their use continued to be permissive even after they stopped paying rent. The Tafts point to evidence presented during the Hutchinsons' case showing they: used the Taft property as tenants pursuant to a lease allowing them to graze livestock and farm; never paid the taxes on the property; made no substantial improvements to the property; executed a disclaimer in 1964 acknowledging that they were tenants of Josephine Taft and claimed no other right to the property; had notice when the Tafts entered into oil and gas leases for the property in 1989 and did not assert that they owned the property; and had notice and did not assert ownership when in 2003 the Tafts negotiated and sold part of the property to the State of Wyoming for purposes of widening the county road and converting it to a state highway.

[¶ 12] Like Rule 50(a)(1) allowing the entry of judgment as a matter of law at the close of a plaintiff's case in a jury trial, Rule 52(c) allows the district court to enter judgment during a bench trial after a party has presented all of his or her evidence and it is clear under controlling law the claim can-not be maintained. We review an order granting judgment as a matter of law under Rule 50(a)(1) *de novo*, giving no deference to the district court's decision. *Conner v. Bd. of Co. Comm'rs, Natrona Co.*, 2002 WY 148, ¶ 8, 54 P.3d 1274, 1279 (Wyo.2002). It is appropriate that we review a district court's Rule 52(c) order granting judgment on partial findings under the same standard. We view the plaintiff's evidence as true and afford it all favorable and reasonable inferences. *Mountain View/Evergreen Improv. and Serv. Dist. v. Casper Concrete Co.*, 912 P.2d 529, 531 (Wyo.1996). When the plaintiff's proof has failed in some aspect, the motion is properly granted; when the plaintiff's proof is overwhelming or when the plaintiff has presented a *prima facie* case, the motion is properly denied. *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781, 795 (Wyo. 1989), citing *Fuller v. Fuller*, 606 P.2d 306, 307–308 (Wyo.1980).

[¶ 13] As the Hutchinsons state, to prove that they adversely possessed the Taft property, they were required to show actual, open, notorious, exclusive and continuous possession of the Taft property and that such possession was hostile, under claim of right or color of title and continued for the statutory ten year period. *Kimball*, 993 P.2d at 305. Absent a clear showing to the contrary, a person who has occupied the land for the statutory period, in a manner plainly indicating that he has acted as the owner thereof, is entitled to a presumption of adverse possession and the burden shifts to the opposing party to explain such possession. *Id.* If, however, a claimant's use of the property is shown to be permissive, he cannot acquire title by adverse possession. *Id.* at 306.

[¶ 14] The Hutchinsons concede that initially they used the property permissively as tenants pursuant to the lease granted by the Tafts and, in accordance with the lease, paid rent of $50 per year from 1961 until the early 1970s. For that period of time, they do not contend their use of the property was adverse. They assert, however, that when they stopped paying rent sometime between 1970 and 1975 and continued to openly use the land for pasturing livestock and farming,

their use was no longer permissive. They claim the action of ceasing to make rental payments was a declaration of hostility so manifest and notorious that actual notice of adverse use must be presumed. They further claim that the evidence that their property and the Taft property were enclosed together inside a fence, with no fence separating the two properties from each other, established adverse possession. For the latter proposition, they cite *Davis*, ¶ 9, 55 P.3d at 1270, in which we reaffirmed the principle that, "In some circumstances, enclosing land in a fence is sufficient to 'raise the flag' of an adverse claimant." *Id.*, citing *Meyer v. Ellis*, 411 P.2d 338, 343 (Wyo.1966).

[¶ 15] At trial, the evidence was undisputed that the Hutchinsons stopped paying rent in the early 1970s and continued to use the Taft property. From 1961 until the Hutchinsons began leasing their property to third parties in 1997, they used the majority of their property and the Taft parcel for pasturing cattle and a smaller part, including 150 feet of the Taft parcel, for wheat farming. They used the property for these same purposes before and after they stopped paying rent. Since 1997, when the Hutchinsons leased their property to third parties, the Taft parcel has been used along with the Hutchinson property primarily for pasture. Thus, the use of the property has not changed materially since the Hutchinsons began renting it in 1961.

[¶ 16] The evidence was also undisputed that the Hutchinson and Taft properties were enclosed by a perimeter fence when the Hutchinsons purchased the property in 1961. Although they maintained the fence enclosing the properties, the fence was built before they purchased their property; therefore, their claim that they enclosed the property inside a fence was not supported by the evidence. The evidence also showed that the Hutchinsons re-drilled a well that was located on the Taft parcel; however, the well was drilled by someone else prior to the time they purchased their property and began leasing the Taft parcel. Other than maintaining the fence and re-drilling the well, no evidence was presented that the Hutchinsons

made substantial improvements on the Taft parcel.

[¶ 17] In 1964, when the U.S. Army Corps of Engineers sought permission to construct a cable line across the Taft parcel, Josephine Taft gave them permission and signed the easement deed. As part of the transaction, the Hutchinsons signed a disclaimer stating that they occupied the parcel as tenants of Josephine Taft and claimed no right, title, lien or interest in the premises by reason of the tenancy. Additionally, Josephine Taft, as owner, and the Hutchinsons, as tenants, signed an agreement in which they agreed to accept payment of $15 to them jointly for damage to the Hutchinsons' crops resulting from the easement.

[¶ 18] The evidence presented at trial showed the Tafts, not the Hutchinsons, paid the property taxes on the Taft parcel. The evidence also showed that when the Tafts entered into oil and gas leases on their parcel in 1989, the division orders and other documentation relating to those leases were signed by, and the royalties were paid to, the Tafts as owners. Likewise, when the State sought to purchase a strip of the Hutchinson and Taft properties in order to widen the county road and convert it to a state highway, the State transacted with and paid the Hutchinsons for their property and separately transacted with and paid the Tafts for their strip of property. Although the Hutchinsons had notice of the Tafts' transactions with the State and the oil companies, they did not challenge the Tafts' title to the property or assert that they owned the property.

██ [¶ 19] A permissive user may change his possession into adverse title with a clear, positive, and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge. *Kimball*, 993 P.2d at 306. "[T]here must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile." *Id.* We have applied these principles in a number of cases to reach varying results. *See Kimball*, upholding rulings that one claimant did not establish hos-

tile use by showing use of property for pasture that was enclosed inside a fence off the property line but another claimant established hostile use by showing she built a home on one acre of property inside the fence and erected a fence to keep cattle from grazing around the home; *Davis,* ¶ 12, 55 P.3d at 1271, upholding a finding of hostile use where the claimant had used the property for grazing purposes continuously for thirty years and the property was enclosed with his property inside a boundary fence separating it from the record title owner's property; *Addison v. Dallarosa–Handrich,* 2007 WY 110, ¶ 7, 161 P.3d 1089, 1090–91 (Wyo.2007), upholding a finding of no hostile use where property was enclosed inside fence of convenience and claimant used it to grow trees; *Cook v. Eddy,* 2008 WY 111, ¶ 8, 193 P.3d 705, 708–09 (Wyo.2008) upholding a finding of hostile use where the property was enclosed with the claimant's property inside a boundary fence and the claimant put up "No Trespassing" signs. None of these cases involved the situation we are presented with here, where the initial use was permissive pursuant to a rental agreement and the claimant asserts it became hostile upon cessation of the rental payments. Absent Wyoming case law, we look to other jurisdictions for guidance.

[¶ 20] In *Glover v. Glover,* 92 P.3d 387 (Alaska 2004), the court addressed a similar issue. Billy Glover's predecessor in interest owned Lot 9 and allowed Dan Snyder to build a house on it and live there. After the lot was conveyed to Mr. Glover, he sold it in 1965 to a third party who later conveyed it back to Mr. Glover. When Mr. Glover's successor in interest tried to sell the lot, Mr. Snyder's successor in interest, who had continued to live in the house, claimed ownership on the basis of adverse possession. The district court determined that Mr. Snyder's use of the lot was permissive until Mr. Glover sold it in 1965 and at that point it became adverse.

[¶ 21] The Alaska Supreme Court disagreed, holding there was insufficient evidence of adverse use to support the district court's determination. The Court stated:

> [W]hen possession begins with the true owner's permission, it cannot become hostile unless the presumption of permission "is rebutted 'by proof of a distinct and positive assertion of a right hostile to the owner of the property.'"

*Id.* at 392. Addressing the issue of cessation of rental payments, the Court stated:

> [T]he fact that no rent was paid after [a specified date], cannot defeat the permissive nature of the [tenant's] possession. Nonpayment of rent does not establish hostility. The passive failure to make payments is not a "distinct and positive assertion" of ownership. If nonpayment terminated the lease, it only turned [the tenant's] interest in the land into a tenancy at sufferance. "An estate at sufferance is an interest in land which exists when a person who had possessory interest in land by virtue of an effective conveyance, wrongfully continues in the possession of the land after the termination of such interest, but without asserting a claim to superior title." A tenancy at sufferance is a permissive interest and cannot be the basis for adverse possession. Furthermore, we decline to establish a rule that gives tenants an incentive to stop paying rent in the hope of establishing an adverse possession claim.

*Id.* at 393.

[¶ 22] The Alaska court concluded that to become an adverse possessor, a tenant must openly and explicitly disclaim and disavow any and all holding under his former landlord and unreservedly and steadily assert that he himself is the owner of the true title.

> [W]hen a claimant started out occupying land permissively, it is essential that his new, hostile interest in the property be made clear to the true owner.... [I]f a tenant merely acts as he always did, the owner will not be on notice of his new, hostile claim.

> An adverse claimant who entered land as a tenant must usually show some distinct act, like an open announcement of his claim or a change in his use of the land, sufficient to serve as a distinct and positive

assertion of his claim to own[ership of] the property.

*Id.* at 394.

■ [¶ 23] The Alaska court's reasoning is consistent with our jurisprudence requiring that one claiming his use of another's property is no longer permissive and has become hostile must establish that he clearly, positively, and continuously disavowed the true owner's title with the latter's knowledge. Under this standard, it would not be enough for a tenant to show merely that he stopped paying rent. Rather, he must establish that he took affirmative steps, such as an open announcement or a change in use, to repudiate the true owner's title and claim the land as his own. The Hutchinsons took no such affirmative steps. Their use of the Taft parcel remained essentially the same the entire time and they did not disavow the Tafts' ownership when to do so would have been consistent with their present claim. In particular, their adverse possession claim is undermined by the fact that they signed documentation in 1964 acknowledging the Tafts' ownership of the property and did nothing to repudiate the Tafts' title when the Tafts entered into oil and gas leases on their parcel in 1989 for which they received royalty payments and sold part of their parcel to WYDOT in 2003.[1]

[¶ 24] In concluding that the evidence did not establish adverse possession, we note that some jurisdictions have adopted a less stringent approach than the Alaska court. In *Tex–Wis Co. v. Johnson,* 534 S.W.2d 895, 899 (Tex.1976), for example, the Court held that adverse possession is established by evidence showing a tenant's long continued possession of the land and the true owner's non-assertion of ownership. Even under that standard, however, the Hutchinsons' claim would fail. The Texas court defined "non-assertion of ownership" as the absence of any overt act of ownership on the part of the true owner that is inconsistent with adverse possessor's claim. The Tafts' actions in entering into oil and gas leases on the property and selling a portion of the property to the State constituted overt acts of ownership inconsistent with the Hutchinsons' adverse possession claim. Viewing the evidence the Hutchinsons presented as true, we find no error in the district court's ruling granting judgment for the Tafts.

## 2. *Exhibit 9*

■ [¶ 25] On the day of trial before opening statements, the Tafts objected to the Hutchinsons' Exhibit 9. The district court did not rule on the objection. The trial proceeded and when the Hutchinsons rested the district court entered judgment on partial findings in favor of the Tafts without ever ruling on the admissibility of Exhibit 9. The Hutchinsons assert the district court abused its discretion in failing to admit Exhibit 9 when they requested its admission prior to trial. Exhibit 9 consisted of Cara Taft's and Mr. Harney's discovery responses in which they stated:

> The Taft family has owned the subject property since December of 1909. [Cara Taft and Leon Harney] have known Josephine Taft since 1939. They knew of her semiannual trips to Wyoming to inspect the vacant grassland she owned and knew she intended to keep the grassland vacant. Josephine Taft rented the land only once.

1. At one point in their brief, the Hutchinsons assert that they were prevented from notifying the true property owner of their adverse possession claim because the Tafts' ownership was not recorded in Laramie County until very recently. The Hutchinsons state that from 1930 until 2005 the record owner of the Taft property was D.J. Miller. Although a receipt endorsed by a Kansas probate judge purported to convey the property from Mr. Miller to Josephine Taft in 1931, her ownership of the property was never recorded in Laramie County. Apparently, the Tafts' ownership of the property was not recorded in Laramie County until 2005 when, during probate proceedings, title to the property was quieted in Cara Taft, trustee of the Taft Living Trust, and Leon Harney. The Hutchinsons claim these facts effectively prevented them from knowing the Tafts owned the property and notifying them of their adverse possession. The Hutchinsons' trial testimony did not give the slightest hint that they were uncertain about who owned the Taft property. Even assuming some uncertainty, the Hutchinsons knew who they rented the property from, and who the Corps of Engineers, the oil companies and the State treated as the true owner. Under these circumstances, their claim that they were prevented from notifying the true owner has little merit.

She rented the land to Darrold K. Hutchinson for grazing purposes, and that rental agreement ended on June 23, 1964. At that time, Darrold K. and Vera Hutchinson signed, with witnesses, a disclaimer to further use as tenants.[2] Josephine Taft also signed the document as owner.

[¶ 26] The Hutchinsons assert Exhibit 9 was admissible under W.R.E. 801(d) and 804(b)(3), which provide in pertinent part as follows:

**Rule 801. Definitions.**

The following definitions apply under the article:

. . . .

(d) *Statements which are not hearsay.*— A statement is not hearsay if:

. . . .

(2) Admission by Party–Opponent.—The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth[.]

**Rule 804. Hearsay exceptions; declarant unavailable.**

. . . .

(b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(3) Statement Against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

The Hutchinsons contend Exhibit 9 was admissible under Rule 801 as an admission by Cara Taft that as of June 23, 1964, the permissive use ended. They further contend it was admissible under Rule 804 as a statement against interest by Leon Harney who died prior to trial and was, therefore, unavailable as a witness.[3]

[¶ 27] We review claims of error concerning the admission or exclusion of evidence for abuse of discretion. *City of Gillette v. Hladky Constr., Inc.,* 2008 WY 134, ¶ 84, 196 P.3d 184, 207 (Wyo.2008). We will not disturb such rulings absent a clear abuse of discretion. *Id.* In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the district court could reasonably conclude as it did. *Id.*

[¶ 28] Here, there is no "ruling" to consider. The district court, in fact, did not rule on the Tafts' motion to exclude Exhibit 9. Rather, upon hearing the motion the morning of trial, the district court deferred ruling and moved ahead with opening statements. The issue was not addressed again because the Hutchinsons rested their case without offering the exhibit. While it is apparent from the record that the Hutchinsons intended to offer, or at least to rely upon, Exhibit 9 during the Tafts' presentation of their case, the opportunity never arose because the district court granted judgment for the Tafts at the close of the Hutchinsons' case. We find nothing unreasonable in the district court's decision to defer ruling on the motion to exclude Exhibit 9. Accordingly, we find no abuse of discretion.

### 3. Denial of Motions to Amend Findings and For New Trial

[¶ 29] The Hutchinsons' final contention is that the district court erred in

2. The only "Disclaimer" contained in the record is the one discussed in paragraph 17 above in which the Hutchinsons averred that they were "occupying the [Taft parcel] as the tenants of Josephine Taft" and "claim[ed] no right, title, lien or interest in and to" the property on which she granted an easement to the U.S. Army Corps of Engineers. Rather than disclaiming further use of the Taft parcel as tenants as suggested in the Exhibit 9 discovery response, the Hutchinsons acknowledged in the disclaimer that they were using the property as tenants. The disclaimer is signed by the Hutchinsons, not by Josephine Taft. Her signature does appear, however, on the agreement in which she and the Hutchinsons agreed to accept the $15 payment in lieu of requiring the Corps of Engineers to restore any crop damage caused by the easement.

3. As reflected in the case caption, after Mr. Harney's death, the co-executrices of his estate were substituted as parties.

denying their motion to amend the findings or grant a new trial. They assert they were entitled to either a new trial or amended findings because an irregularity in the proceedings occurred, denying them a fair trial, when the district court entered judgment for the Tafts halfway through the trial and they did not have the opportunity to examine Cara Taft and offer Exhibit 9 into evidence.

 [¶ 30] W.R.C.P. 59, governing new trials and amendment of judgments, provides in relevant part:

(a) *Grounds.*—A new trial may be granted to all or any of the parties, and on all or part of the issues. On a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:

(1) Irregularity in the proceedings of the court ... or prevailing party, or any order of the court ..., or abuse of discretion, by which the party was prevented from having a fair trial;[4]

We review a district court's ruling on motion for new trial or to amend its findings for abuse of discretion. *Befumo v. Johnson,* 2005 WY 114, ¶ 18, 119 P.3d 936, 943 (Wyo. 2005).

[¶ 31] The Hutchinsons argue the irregularity in the proceedings that prevented them from having a fair trial occurred when the Tafts moved for, and the district court granted, judgment in their favor after the Hutchinsons had reserved the right to call Cara Taft. The Hutchinsons suggest it was improper for the Tafts' counsel to represent that he intended to call Cara Taft, allow them to rest and then move for judgment on partial findings. They further suggest that it was unfair under the circumstances for the district court to grant the motion without allowing them to present the witness they had reserved the right to call.

 In denying the Hutchinsons' post-trial motions, the district court found that the Hutchinsons had not presented sufficient evidence to show that what began as permissive use became hostile use. Implicit in the district court's finding is the conclusion that neither the admission of Exhibit 9 nor Cara Taft's anticipated testimony would have changed that result. That evidence would not have satisfied the Hutchinsons' obligation to show a clear, positive, and continuous disavowal of the Tafts' title to the property. Given the evidence presented, we cannot conclude the district court's determination was unreasonable. To reiterate, the Hutchinsons' use of the Taft parcel remained essentially the same from the time they rented it in 1961 to the time of trial. As occasions arose when they could have disavowed the Tafts' ownership and asserted their own, the Hutchinsons did neither. In the face of division orders and royalty payments to the Tafts as owners of the property, the Hutchinsons did nothing; in the face of the State's efforts to purchase a strip of the Taft property, the Hutchinsons did nothing. The Hutchinsons' evidence, with or without Exhibit 9 and Cara Taft's testimony, simply was insufficient to establish adverse use. The district court did not abuse its discretion in denying the post-trial motions.

[¶ 33] Affirmed.

---

4. W.R.C.P. 61, referenced in Rule 59, provides as follows:

**Rule 61. Harmless error.**
No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.