2005 WY 158

Randall K. BOYKIN, Appellant
(Petitioner),

v.

CARBON COUNTY BOARD OF COM-
MISSIONERS; Silver Spur Land and
Cattle, LLC, a Colorado limited liability
company; Betty Merrill; Bob Switzer;
and Ted Vyvey, Appellees (Respondents).

No. 05–83.

Supreme Court of Wyoming.

Dec. 13, 2005.

Representing Appellant: William L. Hiser of Brown & Hiser, LLC, Laramie, Wyoming.

Representing Appellees: Thomas A. Thompson, Carbon County Attorney Civil Deputy, Rawlins, Wyoming; John A. MacPherson of MacPherson, Kelly & Thompson, LLC, Rawlins, Wyoming. Argument by Mr. MacPherson.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1]   After a contested case hearing, the Carbon County Board of Commissioners (Board) entered an order establishing a road, a portion of which crosses Randall K. Boykin's land, as a county road and public right of way by adverse possession and prescription.  Mr. Boykin filed a petition for review of the Board's order in district court.  The district court affirmed the Board's decision and Mr. Boykin appeals the district court's order.  We affirm.

## ISSUES

[¶ 2]   Mr. Boykin presents the following issues:

I.   Are the Findings of Fact, Conclusions of Law and Order entered by the Board of County Commissioners of Carbon County:  (A) arbitrary and capricious, an abuse of discretion or not otherwise in accordance with law;  (B) in excess of statutory jurisdiction, authority of limitations or lacking statutory right;  (C) contrary to a constitutional right, power, privilege or immunity;  (D) without observance of procedure required by law;  or (E) unsupported by substantial evidence?

II.   Can the county, by establishing a county road by prescription or adverse possession, expand the right of public use of the road beyond the use which has historically been made of the road?

The Board phrases the issues as:

1.   Is there substantial evidence in the record supporting the Board of Carbon County Commissioners' finding that County Road 648 was established under W.S. § 24–1–101 and the common law doctrine of adverse possession or prescription?

2.   Are the rights to use a road acquired by a governmental entity under the common law doctrine of adverse possession or prescription limited to the road's historical use?

## FACTS

[¶ 3]   Mr. Boykin owns property located in the NE1/4, T15N, R84W, in Carbon County, Wyoming.  The road at issue in this case crosses Mr. Boykin's property, passing between his ranch house and his barn.  The road has existed in its present location for fifty years and the parties agree it has been used during that time by Mr. Boykin and his predecessors in interest, other landowners having property beyond the Boykin ranch to access their property, and the school district as a school bus route.  The parties agree the road has also been used by the general public to some extent but disagree concerning how much the public has used it and during what time period.

[¶ 4]   In 1999, the Board adopted and published Resolution 5, which was intended to identify all of the county roads in Carbon County.  The road at issue here was one of the roads identified in the resolution as a county road.

[¶ 5]   Sometime in 1999 or 2000, Mr. Boykin became concerned with what he perceived to be an increase in the general public's use of the road.  In May 2000, he posted no trespassing signs on the north and south boundaries of his property.  In November 2001, the county removed the signs and told Mr. Boykin he could not post signs on a county road.  The following May, Mr. Boykin filed a complaint against the county in district court.  He sought judgment declaring the road was not a county road and quieting title in his name to the portion of the road located on his property.

[¶ 6]   Although Resolution 5 identified the road as a county road in 1999, and people in the area historically referred to it as a county road, the Board took no formal action to establish it as a county road until after Mr. Boykin filed his action to have title to the road quieted in him.  On November 19, 2002, the Board voted to formally establish the road as a county road by adverse possession or prescription pursuant to Wyo. Stat. Ann. § 24–1–101 (LexisNexis 2005).  In accordance with the statute, the Board published notice of its intent in the Rawlins Daily Times and the Saratoga Sun on December 11, 18 and 25, 2002.  Mr. Boykin and the Kermit Platt Revocable Trust filed objections to the establishment of the road as a public right of way.  Mr. Boykin's action against

the county in district court was stayed pending the outcome of the Board's proceedings.

[¶ 7] On October 28 and 29, 2003, the Board held a hearing on the objections. The county and Mr. Boykin presented evidence. Kermit Platt Revocable Trust, the other objector, did not appear at the hearing. On February 3, 2004, the Board entered findings of fact, conclusions of law and an order designating the road as a county road and public highway right-of-way pursuant to § 24–1–101(a) and the common law doctrines of adverse possession or prescription. Most significantly, the Board concluded from the evidence presented:

> [T]he general public has openly, notoriously and continuously used the road for a variety of purposes for more than fifty years. In addition, Carbon County has openly, notoriously and continuously improved and maintained the road at public expense since 1973, and probably much longer. Although Boykin is entitled to a presumption that the general public's use and Carbon County's maintenance of the road were permissive, the proponent has established by a preponderance of the evidence that Carbon County regularly and exclusively improved, maintained and repaired the road from 1973 or earlier until 1985, a period in excess of ten years. Carbon County's regular and exclusive maintenance of the road during this period was sufficient to place the adjacent landowners on notice that it was asserting control over the road in a manner that was inconsistent with their rights of private ownership. The adjacent landowners neither interrupted nor objected to Carbon County's exclusive maintenance of the road prior to 1985. Instead, the adjacent landowners, including Boykin's predecessor in title, relied upon Carbon County to maintain the road and, over time, came to believe that the road was a county road. Carbon County has successfully rebutted the presumption of permissive use in this case.

[¶ 8] Mr. Boykin filed a petition for review of administrative action in district court, raising the same issues he presents to this Court.[1] Upon considering the parties' briefs and arguments, the district court issued a decision letter upholding the Board's findings. The district court stated:

> While this Court may have some sympathy for the problems Boykin has encountered with the ever-increasing use by the public of the road in question, particularly where the road separates his house from the barn, it cannot substitute its judgment for that of the County in the face of the substantial evidence supporting the findings.

## STANDARD OF REVIEW

[¶ 9] Pursuant to § 24–1–101(b), Mr. Boykin's appeal from the Board's decision to establish County Road 648 as a public road by adverse possession or prescription is governed by the Wyoming Administrative Procedure Act. Therefore, we give no deference to the district court's decision and consider the case as though it came directly from the Board. *Lincoln County Bd. of Comm'rs v. Cook*, 2002 WY 23, ¶ 33, 39 P.3d 1076, 1084 (Wyo.2002). Both Mr. Boykin and the county presented evidence at the hearing and so our review of the factual findings is limited to determining whether they were supported by substantial evidence. *Kunkle v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2005 WY 49, ¶ 8, 109 P.3d 887, 889 (Wyo.2005). We have stated the substantial evidence test as follows:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's

---

1. Mr. Boykin asserted an additional issue before the district court that he does not present to this Court. He claimed that the hearing examiner erred in allowing counsel for the county and the Board to appear in this action when a member of said counsel's firm also represented an affected party who sought, and stood to benefit from, the establishment of a county road by prescription.

conclusions. It is more than a scintilla of evidence.

*Id.* (citations omitted).

[¶ 10] The interpretation and correct application of Wyoming statutes are questions of law over which our review is plenary. *Lincoln County,* ¶ 34, 39 P.3d at 1085. We affirm an administrative agency's conclusions of law only if they are in accord with the law. *Id.* We give no deference to the agency's determination, and will correct any error made by the agency in interpreting or applying the law. *Id.*

## DISCUSSION

[¶ 11] In his first issue, Mr. Boykin argues generally that the Board's order was arbitrary, capricious, an abuse of discretion, not in accordance with Wyoming law and unsupported by substantial evidence. The thrust of his claim is that sufficient evidence was not presented to show that the county's use of the road was adverse, hostile or exclusive to his use of the road. Rather, he contends, the evidence established that the county's use was permissive, and that is not sufficient under Wyoming law to support the establishment of a county road by prescription. He cites *Lincoln County,* 39 P.3d 1076, *Yeager v. Forbes,* 2003 WY 134, 78 P.3d 241 (Wyo.2003), and other Wyoming cases cited therein as support for his claim.

[¶ 12] The county responds that the overwhelming weight of the evidence supported the Board's findings. The county points to evidence showing: the road existed in its current location for at least fifty years and all of the landowners who used the road, except Mr. Boykin, thought it was an established county road; it is a well-defined, improved gravel road and was marked with a county road sign as early as 1957; the county has worked to maintain the road for over twenty-five years, including installing and repairing culverts, installing cattle guards, hauling gravel, and grading and plowing the road; the road has been designated and used as a school bus route since the 1950s; Mr. Boykin observed the use of the road between his house and outbuildings by the county and numerous others on a daily basis; Mr. Boykin knew the county did not have a recorded easement for the road but did nothing about it; the road was identified as a county road in 1999 in Resolution 5; it was shown on maps as a county road as early as 1962; Mr. Boykin's mother, who purchased the ranch in 1957 and lived there until 1985, testified the county used and maintained the road for more than ten years and its use was inconsistent with her ownership of the road. The county asserts this evidence was sufficient to overcome the presumption that use of the road by the county and general public was permissive, making the determination of whether the use was adverse to Mr. Boykin's asserted ownership of the road a factual one for the Board based upon weighing the evidence and assessing the credibility of the witnesses.

[¶ 13] Section 24-1-101 provided a process whereby boards of county commissioners were to determine by January 1, 1924, what roads within their respective counties were "necessary or important for the public use as permanent roads" and to record those roads as county highways. With but one exception, roads within the state constitute public roads only if they were lawfully established in accordance with the statute. The one exception to the statutory procedure for establishing public roads is at issue here. That exception, found in § 24–1–101(a), provides in pertinent part:

> Except, nothing contained herein shall be construed as preventing the creation or establishment of a public highway right-of-way with reference to state and county highways under the common-law doctrines of adverse possession or prescription either prior to or subsequent to the enactment hereof.

By its express reference to the common law doctrines, the statute incorporates past decisions by this Court in which we settled upon the standards governing claims of adverse possession and prescription. *Lincoln County,* ¶ 38, 39 P.3d at 1086.

[¶ 14] Under the common law, a party asserting a claim of adverse possession or prescription has the burden of proving adverse use, under color of title or claim of right, such as to put the owner on notice that

an adverse·right was being claimed. *Koontz v. Town of Superior,* 746 P.2d 1264, 1268 (Wyo.1987). The adverse use must be continuous and uninterrupted for the prescriptive period, which, in Wyoming, is ten years. *Id.* Adverse or hostile use is use inconsistent with the rights of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder. *Id.* If use is permissive, no easement can be acquired by prescription. *Id.* Use is presumed to be permissive absent evidence of adverse use.

[¶ 15] Open, notorious, continuous and uninterrupted use for the ten year period is not sufficient to overcome the presumption that the use was permissive. *Lincoln County,* ¶ 41, 39 P.3d at 1086. Use by permission or the absence of objection will not ripen into title no matter how long continued. *Id.,* ¶ 40, 39 P.3d at 1086. To rebut the presumption that use was permissive, the claimant has the burden of establishing that his hostile and adverse use inconsistent with the owner's interest was brought home to the owner in a clear and unequivocal way. *Powder River Ranch, Inc. v. Michelena,* 2005 WY 1, ¶ 16, 103 P.3d 876, 881–82 (Wyo.2005). The subjective intent of the party claiming the easement is immaterial. *A.B. Cattle Co. v. Forgey Ranches, Inc.;* 943 P.2d 1184, 1188 (Wyo.1997). In cases like this one involving a public claimant, the claimant's construction or maintenance of a road is evidence of its control of and jurisdiction over the road, a necessary element to showing that its use is adverse and under a claim of right. *Lincoln County,* ¶ 41, 39 P.3d at 1086. Although not determinative, maintenance or repair of a road by a claimant suggests that the use is adverse to the owner's interest. *Powder River Ranch,* ¶ 13, 103 P.3d at 881.

[¶ 16] On the basis of these principles, we held in *Koontz* that the undisputed evidence of regular public use of the road inconsistent with the owner's rights combined with evidence that the town had maintained the road since the 1950s effectively rebutted the presumption of permissive use and established sufficient notice to the owners that an adverse right was being claimed.[2] In *Koontz,* the owners of three lots in the town of Superior discovered in 1980 that Division Street ran across two of the lots and not, as everyone believed, south of the lots. Upon learning that the street crossed their property, the landowners blocked its passage by placing a mobile home where the street was located. The town claimed the street had been traveled continuously and in an open, notorious and adverse manner by the general public since at least the 1950s. The town also claimed it had maintained the street since that time. The landowners did not dispute that the public had regularly used the street since the 1950s, but attempted to refute the town's claim that the use was adverse by submitting two affidavits. The first contained the landowners' statement that they permissibly allowed the property to be used as a public street. The second contained the statement of the landowners' predecessor in interest that if the town had informed him of its claim, he would have denied use of his property as a public street. We concluded neither of the affidavits demonstrated that permission was asked or given. Because the landowners presented no other evidence to refute the evidence presented by the town to rebut the presumption, we upheld the order granting a prescriptive easement.

[¶ 17] We applied the same principles to conclude in *Lincoln County* that an administrative finding of adverse use was not supported by substantial evidence. In that case, the county sought to establish a road as a county road by prescription. The landowners objected and the board of county commissioners held a hearing. Evidence was presented that the public used the road historically for access to camping, hunting and woodcutting. Evidence was also presented that the road was used for search and rescue operations, transporting cattle and to access adjacent property. The prior owners stated they had allowed public use of the road in

---

2. *Koontz* involved a municipality and was not decided under § 24–1–101. Additionally, the provision in the statute allowing county roads to be established by adverse possession or prescription was added after *Koontz* was decided. Despite these distinctions, *Koontz* is pertinent authority because it applies the common law doctrines at issue here.

recognition of an established course of dealing to facilitate the use of private and public property for ranching, governmental, recreational and other purposes. There was also evidence that those who used the road in most cases did not ask permission, use for the stated purposes was never denied, and when permission was sought it was given. The county presented evidence of county maintenance of the road. However that maintenance was performed primarily upon specific request and ended in the 1980s. Thereafter, private parties maintained the road. We concluded the evidence was insufficient to overcome the presumption of permission.

[¶ 18] More recently, in *Powder River Ranch*, we held private claimants established a prescriptive easement by showing the requisite elements. The evidence in that case showed the claimants used the road consistently for nearly forty years, did not seek or obtain permission, directed guests and invitees to use the road, installed cattle guards and performed other maintenance and repair of the road without seeking permission. In addition, the servient estate owner filed an affidavit stating it had not given anyone permission to use the road.

[¶ 19] In the case before us, the evidence the county presented to rebut the presumption that use of the road across Mr. Boykin's property was permissive included the testimony of Bill Nation, the county road and bridge superintendent. Mr. Nation testified that in his sixteen years with the county the road at issue was known to him only as county road 648, recognized and treated as part of the county road system and identified as county road 648 on all of the maps of the county road system he had seen.

[¶ 20] Mr. Nation also testified county road 648 received at least the same regular routine maintenance that all roads within the county road system received and may have received more because it was also used by the school district as a bus route. He testified the county bladed the road at least twice a year throughout his sixteen years with the county and plowed as necessary to keep the road open and passable for the school bus and other traffic through the winter. He testified that public funds were expended to improve the road, including money for culvert and cattle guard repairs, road signs, gravel and recycled asphalt. In addition, the county expended funds for the equipment and man hours involved in maintaining the road. Mr. Nation testified that he never asked any of the landowners along the road for permission to use or maintain the road, nor did any of the landowners object to his use or maintenance of the road prior to Mr. Boykin's objection in 2001.

[¶ 21] Neighboring landowners, some of whom had lived along the road for several decades, testified they always considered the road to be a county road. They testified the road was used by the school bus, utility services, area ranchers, recreational vehicles and the general public. They testified no one ever asked them for permission to use the road. They testified it was their understanding the county was responsible for maintaining the road and the county in fact maintained it.

[¶ 22] Other county road and bridge department employees testified they considered the road to be a county road and it was treated and maintained by the county as though it was a county road. Ron Garretson, a twenty-six year employee of the road and bridge department, testified that in 1979 or 1980 he installed extensions on cattle guards on the road on the southern and northern boundaries of Mr. Boykin's property to make it easier to get the county road grader through for snow removal. He also replaced a culvert on the road at the request of Mr. Boykin's mother, who lived on the property prior to Mr. Boykin obtaining ownership. He testified the county paid for the repairs. He also testified he graveled the road for the county sometime in the 1980s. He never asked for permission to maintain or make repairs on the road because he believed it was a county road.

[¶ 23] A former member of the school board for Carbon County School District No. 2 testified that school district policies and state regulations require that school buses be run only on publicly owned and maintained roads. He testified that during his tenure on the board, beginning in 1985, the school dis-

trict complied with the policies and regulations and did not run buses on private roads. The school district ran a bus on county road 648 because it believed, like most people, that it was a county road.

[¶ 24] Ms. Nina Parkhurst, Mr. Boykin's mother, who lived on the ranch continuously from 1957 to 1985, testified the school bus used and the county maintained the road the entire time she lived there. She testified she asked the county about fixing the culvert to the south of her property because puddles were forming on the road. She testified she must have thought it was the county's responsibility or "something like that" to fix the culvert or she would not have approached the county about it. She testified she never told the county not to grade the road nor did she give permission for them to grade it. She also testified the county's maintenance of the road was inconsistent with her ownership of it. In fact, she testified, she did not think the road was her property, it had been there a long time before she got there, people had always used it and she did not build it or maintain it.

[¶ 25] From this evidence, we conclude the county met its burden of rebutting the presumption that use of the road was permissive. The undisputed evidence of regular public use of the road inconsistent with Mr. Boykin's rights combined with evidence that the county expended significant public funds to consistently maintain the road beginning in at least the 1950s effectively rebutted the presumption of permissive use and established sufficient notice to Mr. Boykin that an adverse right was being claimed. The county presented substantial evidence establishing that its use was hostile and adverse, inconsistent with Mr. Boykin's claim of ownership and brought home to Mr. Boykin in a clear and unequivocal way. As a public claimant, evidence of the county's exercise of control and jurisdiction over the road for many years demonstrated its claim of right which was by its nature adverse to Mr. Boykin's title.

[¶ 26] Despite the substantial evidence of adverse use, Mr. Boykin claims the evidence was insufficient because it did not show the county's use was exclusive or inconsistent with his use. Citing *Yeager* and *Lincoln County*, Mr. Boykin contends Carbon County must present evidence of "exclusive use." Mr. Boykin's contention misses an important distinction.

[¶ 27] The authority cited in *Yeager* and *Lincoln County* made clear that a showing of exclusive use was necessary only when a claimant relied upon a presumption of adverse or hostile use. *See Shumway v. Tom Sanford Inc.* 637 P.2d 666, 669 (Wyo.1981); 28 C.J.S. *Easements* § 68, pp. 736–37 (1941). In *Shumway*, the claimant argued for a presumption of adverse and hostile use arising out of the establishment of open, visible, continuous, unmolested use. While noting such a presumption had been recognized by this court in previous cases, we addressed the inconsistency between the presumption of adverse use and the presumption of permissive use, and concluded the presumption of permissive use should prevail in Wyoming.[3] In discussing the presumption of adverse use we cited 28 C.J.S. *Easements* § 68, which states:

> *Presumptions arising out of user.* The continuous user of an easement under a claim of right is presumptive evidence of ownership thereof, as against anyone who

3. "While we recognize that this disposition has the possibility of permitting termination of long and historic uses of unimproved roads, we are firm in our conviction that the best rule for the State of Wyoming is one which requires that a landowner claiming an easement by prescription in an unimproved road crossing the lands of his neighbor must assume the burden of establishing that his intention to make a hostile use of the road adverse to the interests of his neighbor was brought home to the neighbor in a clear and unequivocal way. His subjective intent will not be considered material, and while it is likely true that a manifestation of his hostile and adverse intent will result in revocation of permission to use the road across the neighbor's land, this is the best posture for the law to assume in the State of Wyoming. *The claimant cannot rely upon a presumption arising out of the open, notorious, continuous and uninterrupted use for the prescriptive period, but in the absence of more that use will be presumed to have been with permission.* To rebut this presumption the claimant must introduce evidence of the facts which demonstrate the manner in which the hostile and adverse nature of his use was brought home to the owner of the adjacent land." *Shumway,* 637 P.2d at 670 (emphasis added).

does not show a superior right. While the contrary is true in some jurisdictions, sometimes by reason of statute, the general rule is that proof of an open, notorious, continuous and uninterrupted user for the prescriptive period, without evidence to explain how it began, raises a presumption that it was adverse and under a claim of right, or, as is sometimes stated, raises a presumption of a grant, and casts on the owner of the servient tenement the burden of showing that the user was permissive or by virtue of some license, indulgence, or agreement, inconsistent with the right claimed. The facts to admit of such presumption are not, however, presumed; and the presumption itself is merely prima facie and may be rebutted. The presumption does not arise where the user is shown to be permissive in its inception, or where it is not shown to have continued for the prescriptive period; nor, in the absence of some decisive act indicating separate and exclusive use, does it arise where the user is not inconsistent with the rights of the owner, as, for instance, where the user is in connection with that of the owner or the public or is claimed with respect to unoccupied, unenclosed, and unimproved lands, the use in such cases being presumed to be permissive and in subordination to the owner's title. The latter presumption is not conclusive, however, and may be rebutted.

*Shumway,* 637 P.2d at 669–70. The only mention of the need to show "exclusive use" in this excerpt was in the context of a claimant seeking to rely upon the presumption of adversity. In that context, a claimant must show a decisive act of separate and exclusive use. A claimant cannot rely upon the presumption of adverse use if the use is consistent with the rights of the owner such "as, for instance, where the user is in connection with that of the owner or the public...." *Id.*

[¶ 28] This authority suggests that if Carbon County had relied upon the presumption of adverse and hostile use, it was required to present evidence of its "exclusive use" of the easement. However, Carbon County did not attempt to rely upon that presumption. In fact, in the context of a public entity's claim that a public road had been established by easement, one may wonder what kind of evidence could demonstrate "exclusive use." Perhaps it could be evidence of the county maintaining the road and preventing the owner from doing so. In any event, such musing is unnecessary because the county did not rely upon the presumption of adversity, but instead provided evidence of the lack of a permissive use.

[¶ 29] Mr. Boykin's second claim is that the establishment of the road as a county road constituted an impermissible expansion of the historic adverse use that was the basis for the prescriptive claim. His claim is twofold: first, he claims the road established as a county road is wider than the road that historically crossed his property; and, second, he claims the Board's order allows for the road to be used in a manner in which it has not been historically used. With respect to the latter claim, he asserts the general public now has unrestricted use of the road and the property owner beyond him can subdivide his property and guarantee access to the many new residents by way of the road across his land. In support of his claim, Mr. Boykin cites a number of cases from other jurisdictions involving private parties and *Haines v. Galles,* 76 Wyo. 411, 303 P.2d 1004, (1956). Like Mr. Boykin's other authorities, *Haines* was a dispute between private landowners in which we held that the plaintiff was entitled to use the private right of way across the defendants' land only in a manner consistent with the use giving rise to the claim for prescription.

[¶ 30] We have not applied the restrictive use principle from *Haines* to claims of adverse possession or prescription brought by public entities under § 24–1–101. Faced with this question, the district court concluded the restrictive use principle applicable between private parties did not apply to claims for the establishment of public highway right-of-ways under the statutory provision. The district court stated:

This Court is persuaded that Wyo. Stat. Ann. § 24–1–101(a), as used by the County, creates a "public highway right-of-way." The use of a public highway right-of-way cannot be limited to historical uses

as may be the case for private claimants of particular prescriptive easements. To rule otherwise would take us down a road we should fear to travel. Boykin's argument could logically be used to prohibit *any* motor vehicle use of the road in question, since, in its early years, the road was undoubtedly used only by some form of foot or horse travel. The use of the road may well increase in the future, and the method of such increased use cannot be foreseen. Such is the nature of a "public highway right-of-way." "To rule otherwise would defeat the very nature of a public road system." *Heath v. Parker*, 30 P.3d 746, 750 (Colo.2001).

We agree with the district court's reasoning. It is consistent with the definition of "public road" found in Wyo. Stat. Ann. § 24–1–133(b) (LexisNexis 2005), which states in pertinent part as follows: "For purposes of this section 'public road' means any passageway ... to which a governing body has acquired unrestricted legal right for the public to use the passageway." As stated by the court in *Lovvorn v. Salisbury*, 701 P.2d 142, 144 (Colo. App.1985):

> While private easements, acquired by prescription, can, and have been so limited, the imposition of such restrictions on public roads or portions of public roads would defeat the very concept of a public road system. The ultimate distinction between a public road and a private easement, however acquired, is that the private easement can be, and is, limited to specific individuals and/or specific uses while a public road is open to all members of the public for *any* uses consistent with the dimensions, type of surface, and location of the roadway.

[¶ 31]   Affirmed.