2010 WY 26

**Elsie L. BRAUNSTEIN, Appellant (Defendant),**

v.

**ROBINSON FAMILY LIMITED PARTNERSHIP LLP,** Appellee (Plaintiff).

No. S–08–0115.

Supreme Court of Wyoming.

March 8, 2010.

Representing Appellant: Paul J. Drew and Anita Ann Czapeczka of Drew Law Office, P.C., Gillette, Wyoming.

Representing Appellee: Max Main of Bennett, Main & Gubbrud, P.C., Belle Fourche, South Dakota.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Since the earliest days of settlement and statehood, complaints and claims of adverse possession have occupied much of the time of the courts of Wyoming. Once again we are requested to grapple within that arena. . . .

*Snell v. Ruppert,* 582 P.2d 916, 917 (Wyo. 1978).

[¶ 2] Today, we consider the appeal of Elsie L. Braunstein (Braunstein), record owner of several parcels of land totaling 615.8 acres adjacent to ranch lands owned by the Robinson Family Limited Partnership LLP (Robinson) near Moorcroft, Crook County, Wyoming. Braunstein appeals the district court's order granting summary judgment to Robinson on its adverse possession complaint seeking title to Braunstein's several parcels of land.

[¶ 3] Because we find that most of the evidentiary materials submitted by Robinson in support of its summary judgment motion are legally insufficient under the requirements of W.R.C.P. 56 and our summary judgment case law, and fail to show the absence of genuine issues of material fact associated with the elements of the claim of adverse possession, and because issues in this case raise important questions about the application of Wyoming's "fence-out" doctrine in the context of an adverse possession claim, which questions require substantial factual development before they can be addressed, we reverse the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.

## ISSUE

[¶ 4] The dispositive issue in this case is whether Robinson properly supported its motion for summary judgment as required by W.R.C.P. 56 and our summary judgment case law.

## BACKGROUND FACTS

[¶ 5] The principal allegations of Robinson's complaint seeking quiet title by adverse possession identified the property in question as the E½SW¼ of Section 2, the NW¼ of Section 11, and the E½NE¼ and S½ (less State Highway of 24.2 acres) of Section 14, Township 49 North, Range 67 West, 6th P.M., Crook County, Wyoming, and averred:

4.

Plaintiff and its predecessors in interest have had hostile, actual, open, notorious, exclusive, and continuous possession of the property under a claim of right for more than ten (10) years last past. During all of such time, plaintiff and its predecessors have enclosed the property with fence and have grazed their livestock on the property.

5.

Defendants claim an estate or interest in the property adverse to plaintiff. Defendants' claim is without any right whatever, and defendants have no estate, right, title, or interest in or to the property, or any part of the property.

[¶ 6] Braunstein filed her answer which admitted she claimed an estate or interest in the property adverse to Robinson and which denied each and every other allegation in the complaint. In her answer she also pleaded a counterclaim alleging she was the owner and entitled to possession of the property in question. Robinson filed its reply to that

counterclaim denying those allegations, alleging the ten-year statutory bar under Wyo. Stat. Ann. § 1–3–103, and alleging estoppels, laches, and waivers.

[¶ 7] With the issues thus joined by the pleadings, the parties engaged in discovery. Without addressing at this point in the opinion either the substantive sufficiency or admissibility of the evidence developed in that discovery, we can say that the parties generally agree for background purposes that Braunstein is the record owner of and has paid the property taxes assessed against the property and Robinson claims satisfaction of the several elements of adverse possession with respect to that property.

[¶ 8] On May 18, 2006, Braunstein filed her motion for summary judgment with accompanying evidentiary materials. Robinson opposed that motion. On October 19, 2006, the district court filed its decision letter in which it announced that Braunstein "has failed to demonstrate that there are no material issues of fact and that [she] is due judgment as a matter of law. Accordingly, each party's motion for summary judgment is denied." The district court's order was filed on November 15, 2006.

[¶ 9] On December 3, 2007, Robinson filed its motion for summary judgment with accompanying evidentiary materials. Those evidentiary materials were:

1. Alden C. Robinson's June 23, 2006, affidavit.
2. Justen T. Robinson's June 23, 2006, affidavit.
3. Justen T. Robinson's Second Affidavit dated November 13, 2007.
4. Donald D. Zacher's October 24, 2007, affidavit.
5. June 9, 1976, Quitclaim Deed conveying the property to Melvin A. Braunstein and Elsie L. Braunstein.
6. Defendant Elsie L. Braunstein's Answers to Plaintiff's First Interrogatories.
7. The Robinson conveyances of the family ranch lands surrounding the property.
8. Elsie L. Braunstein's deposition.

[¶ 10] On May 21, 2008, the district court filed its order granting summary judgment in Robinson's favor, which order incorporated by reference the district court's decision letter which had been filed on April 9, 2008. This appeal followed.

## STANDARD OF REVIEW

[¶ 11] As noted above, Braunstein filed a motion for summary judgment which the district court denied, and more than six months later Robinson filed its motion for summary judgment. In the district court's decision letter announcing its grant of Robinson's motion, it stated:

Preliminarily, the court notes that the issues presented in the motion are not wholly distinct from those addressed in the first motion for summary judgment filed by [Braunstein]. However, the court has determined to treat the current motion in the vein of a cross-motion to that of [Braunstein]. Certain details and facts have been expanded upon and clarified. The court will, therefore, re-evaluate both motions based on the evidence presented by each party to date.

In *State v. Homar*, 798 P.2d 824 (Wyo.1990), this Court was faced with a similar situation where all of the parties had filed motions for summary judgment but the district court had granted only one of them. *Id.* at 825. Stating that we were reviewing only the propriety of the district court's granting the Homars' motion for summary judgment, we explained:

The fact that all parties filed motions for summary judgment does not require the trial court to grant any of the motions and preclude the need for a trial. 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2720, pp. 16–25 (1983). Second, the denial of a summary judgment motion is not reviewable as it is not a final order. *Kimbley v. City of Green River*, 663 P.2d 871, 888 (Wyo.1983); *see* W.R.A.P. 1.04 and 1.05. Thus, our review of a grant of a summary judgment motion is the same whether the review is of a grant of the first motion filed or of a cross-motion. *See, e.g., Stratman v. Admiral Beverage Corp.*, 760 P.2d 974 (Wyo.1988).

The propriety of the court's granting the Homars' motion for summary judgment is reviewed in this appeal.

*Homar*, 798 P.2d at 825–26.

[¶ 12] In the appeal before us now, we make it clear that we are reviewing only the propriety of the district court's granting Robinson's motion for summary judgment.

■ [¶ 13] All courts and practicing attorneys in this state know that summary judgment procedure is governed by Rule 56 of the Wyoming Rules of Civil Procedure. This Court's cases are legion in which we discuss and explain the application of the important legal principles contained in that rule to all manner of claims litigated in our courts. In the case before us, Robinson is the party seeking to recover on its adverse possession claim and, under Rule 56(a), it has moved with supporting affidavits, a deposition, answers to interrogatories, and other material for a summary judgment in its favor upon that claim. As Rule 56(c) provides, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Because Robinson has supported its motion with affidavits, Rule 56(e) becomes applicable. That provision requires that supporting affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." We require that "[t]he material presented to the trial court as a basis for a summary judgment should be as carefully tailored and professionally correct as any evidence which is admissible to the court at the time of trial." *Newton v. Misner*, 423 P.2d 648, 650 (Wyo.1967); *see also White v. Woods*, 2009 WY 29A, ¶ 18, 208 P.3d 597, 602 (Wyo.2009).

[¶ 14] In many cases we have found summary judgment material that failed this requirement. *See, e.g., Bangs v. Schroth*, 2009 WY 20, 201 P.3d 442 (Wyo.2009) (affidavit insufficient for failing to state specific facts, for stating only categorical assertions of ultimate facts without specific supporting facts, and for failing to attach sworn or certified copies of papers referred to in affidavit); *Greenwood v. Wierdsma*, 741 P.2d 1079 (Wyo.1987) (same); *Western Surety Co. v. Town of Evansville*, 675 P.2d 258 (Wyo.1984) (affidavit containing significant opinions and conclusions that may be critical in the outcome of the case must reveal the underlying facts and basis and must have attached documents referred to in affidavit); *Blackmore v. Davis Oil Co.*, 671 P.2d 334 (Wyo.1983) (conclusory affidavit which does not contain specific facts indicating presence or absence of genuine issue of material fact is inadequate); *Bancroft v. Jagusch*, 611 P.2d 819 (Wyo.1980) (bald conclusion type statement that party is or is not negligent contends for the ultimate issue to be decided by the fact finder and is inadmissible in evidence at trial); *Keller v. Anderson*, 554 P.2d 1253 (Wyo.1976) (affidavit containing only affiant's conclusions and hearsay unsupported by competent material factual statements cannot be used by court in disposing of summary judgment motion); *and see also Rizkallah v. Conner*, 952 S.W.2d 580, 586–88 (Tex.App.1997), for informative discussion of insufficient affidavit containing conclusory statements, subjective opinion, and objectionable legal conclusions lacking specific facts.

■ [¶ 15] Rule 56(e) further provides that if the movant has made and supported its motion as required, "an adverse party may not rest upon the mere allegations or denials of [its] pleadings," but that party's response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." However, the non-moving party has no obligation to counter the motion with materials beyond the pleadings until the movant has made a prima facie showing that genuine issues of material fact do not exist. *Bangs*, ¶ 20, 201 P.3d at 452. Because the Wyoming Rules of Civil Procedure were adopted to promote an orderly and efficient means for handling and disposing of litigation, "[c]ompliance with these rules of proce-

dure in summary judgment matters is mandatory." *Platt v. Creighton,* 2007 WY 18, ¶ 9, 150 P.3d 1194, 1199 (Wyo.2007).

[¶ 16] We have well-established standards for reviewing a district court's order granting summary judgment:

> We treat the summary judgment movant's motion as though it has been presented originally to us. We use the same materials in the record that was before the district court. Using the materials in the record, we examine them from the vantage point most favorable to the nonmoving party opposing the motion, giving that party the benefit of all favorable inferences which may fairly be drawn from the materials.

*Bangs,* ¶ 20, 201 P.3d at 452 (internal citations omitted). "Summary judgment is a drastic remedy designed to pierce the formal allegations and reach the merits of the controversy, but only where no genuine issue of material fact is present." *Mathisen v. Thunder Basin Coal Co., LLC,* 2007 WY 161, ¶ 9, 169 P.3d 61, 64 (Wyo.2007). Our appellate review is de novo with no deference afforded the district court's determinations. *Bangs,* ¶ 20, 201 P.3d at 452. With respect to the term "genuine issue of material fact," we have said:

> Materiality of a fact depends upon it having some legal significance so that it establishes or refutes some essential element of a cause of action or defense asserted by one of the parties. In any given case, the materiality of any facts is limited by the pertinent legal standard[s] for the asserted claim and for the corresponding defenses to that claim.

*Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 228 (Wyo.2000) (internal quotation marks and citations omitted).

[¶ 17] In the present case, the materiality of any facts is limited by the essential elements of Robinson's asserted claim of adverse possession. Those elements are well-established in our jurisprudence:

> In order to establish adverse possession, the claiming party must show actual, open, notorious, exclusive and continuous possession of another's property which is hostile

and under claim of right or color of title. *Rutar Farms & Livestock, Inc. v. Fuss,* 651 P.2d 1129, 1132 (Wyo.1982); *City of Rock Springs v. Sturm,* 39 Wyo. 494, 502, 273 P. 908, 910 (1929). Possession must be for the statutory period, ten years. W.S. 1–3–103 (1988).

*Hillard v. Marshall,* 888 P.2d 1255, 1258 (Wyo.1995). We have further observed:

> [T]here is a presumption in favor of the record title holder which can be rebutted if the adverse possession claimant makes, in the absence of explanatory circumstances to the contrary, a *prima facie* case of adverse possession, whereupon the burden shifts back to the record title holder who must produce evidence contrary to the presumption by showing that the claimant's possession was permissive. If the title holder can do that, then it becomes a question of weight and credibility to be determined by the trier of fact.

*Id.* at 1261. One cannot acquire title by adverse possession, however, if its use of the property is shown to be permissive. *Id.* at 1259.

[¶ 18] Many of the adverse possession cases from this Court and the courts of our sister states have identified certain material facts associated with these elements. A non-exhaustive list would include:

1. An adverse possession claimant's failure to pay taxes on the disputed property, while not conclusive, is a fact to be weighed along with the other circumstances in the case and tends to weaken a claim of ownership by adverse possession. *Cook v. Eddy,* 2008 WY 111, ¶ 22, 193 P.3d 705, 712 (Wyo.2008) (bench trial); *Turner v. Floyd C. Reno & Sons, Inc.,* 769 P.2d 364, 368 (Wyo.1989) (bench trial); *Doenz v. Garber,* 665 P.2d 932, 937 (Wyo.1983) (bench trial); *Rutar Farms & Livestock, Inc. v. Fuss,* 651 P.2d 1129, 1135 (Wyo. 1982) (bench trial).

2. The failure of an adverse possession claimant and its ancestors to execute any title instruments affecting the disputed property although they did execute such instruments affecting the property held by them under their deed is a fact to be

weighed along with the other circumstances in the case. *Rutar Farms,* 651 P.2d at 1135 (bench trial); *Meyer v. Ellis,* 411 P.2d 338, 340–41 (Wyo.1966) (bench trial); *Tissino v. Mavrakis,* 67 Wyo. 560, 587, 228 P.2d 106, 116 (Wyo.1951) (bench trial).

3. Whether an adverse possession claimant or its ancestors told anyone that they claimed the disputed property as their own or whether that claim was well known in the community are facts to be weighed along with the other circumstances in the case. *Rutar Farms,* 651 P.2d at 1134 (bench trial); *Meyer,* 411 P.2d at 343 (bench trial).

4. The presence, quality, location, and purpose of fencing in relation to the disputed property and property adjacent to it are facts to be weighed along with the other circumstances in the case. "A fence enclosing land may be sufficient under some circumstances, and not under others.... In case of doubt, the question must be submitted to [the trier of fact]...." *City of Rock Springs v. Sturm,* 39 Wyo. 494, 517–18, 273 P. 908, 916 (1929). *See also Rutar Farms,* 651 P.2d at 1134 (bench trial); *Shores v. Lindsey,* 591 P.2d 895, 901–02 (Wyo.1979) (bench trial). There are cases involving fences of convenience which raise the question of permissive use which would defeat a claim of adverse use. *See, e.g., Addison v. Dallarosa–Handrich,* 2007 WY 110, 161 P.3d 1089 (Wyo.2007) (bench trial); *Gillett v. White,* 2007 WY 44, 153 P.3d 911 (Wyo.2007) (summary judgment); *Davis v. Chadwick,* 2002 WY 157, 55 P.3d 1267 (Wyo.2002) (bench trial); *Kimball v. Turner,* 993 P.2d 303 (Wyo. 1999) (bench trial); *Hillard v. Marshall,* 888 P.2d 1255 (Wyo.1995) (bench trial); and *Turner v. Floyd C. Reno & Sons, Inc.,* 769 P.2d 364 (Wyo.1989) (bench trial). There are cases involving casual or incidental fences which suggest permissive use and cases involving intentional or designed fences which suggest hostile use. *See, e.g., DeArman v. Surls,* 618 S.W.2d 88 (Tex. Civ.App.1981) (jury trial); *McDonnold v. Weinacht,* 465 S.W.2d 136 (Tex.1971) (jury trial); *Wortham v. Nevins,* 383 S.W.2d 467 (Tex.Civ.App.1964) (bench trial) (cited in *Shores,* 591 P.2d at 902 n. 2); *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954) (bench trial).

5. The purpose and type of fencing (for convenience, casual or designed) becomes an important factual issue when an adverse possession claimant uses the disputed property for grazing livestock. In Wyoming and other western states the "fence-out" doctrine has long prevailed as recognized in the following passage in *Martin v. Platte Valley Sheep Co.,* 12 Wyo. 432, 450–51, 76 P. 571, 574–75 (1904):

> The common law rule requiring the owner of cattle to confine them or in default thereof to answer for any damages occasioned by their trespasses upon the lands of another is abrogated, or, rather, never obtained, in this State, nor in the other western states. Indeed, that rule was either not adopted or has been abrogated by statute in a number of other states, notably in Virginia, West Virginia, Mississippi and Texas, and at times in the history of some of the states of the east and middle west, a different rule was held to obtain either in consequence of custom or necessity, or the express provision of statute.
>
> In this State cattle are permitted to run at large; and the principle in force here is that no actionable trespass is committed when domestic animals lawfully at large wander upon and depasture the unenclosed lands of a private owner. (*Cosgriff v. Miller,* 10 Wyo. 190[, 68 P. 206 (1902)]; *State v. Johnson,* 7 Wyo. 512[, 54 P. 502 (1898)]; *Hecht v. Harrison,* 5 Wyo. 279[, 40 P. 306 (1895)]). But it is well settled that this principle will not permit the owner of such animals to wilfully and knowingly drive them upon the premises of another, although unenclosed. (*Cosgriff v. Miller, supra,* and cases cited.) Under the operation of the principle aforesaid, it is incumbent upon a land owner, in order to prevent domestic animals lawfully at large from wandering and trespassing thereon, to properly enclose his land; but if he allows it to remain unenclosed, and the cattle of others, lawfully

at large, wander upon and depasture it, the owner of such cattle will not be guilty of an actionable trespass.

*See also R.O. Corp. v. John H. Bell Iron Mountain Ranch Co.,* 781 P.2d 910, 912 (Wyo.1989) (owner of unfenced pasture that is enclosed by neighbor's pasture cannot recover depasture damages caused by neighbor's cattle that roamed freely from neighbor's pasture onto owner's unfenced pasture); *Garretson v. Avery,* 26 Wyo. 53, 60, 176 P. 433, 434 (1918); *Hardman v. King,* 14 Wyo. 503, 509–10, 85 P. 382, 383–84 (1906); *Haskins v. Andrews,* 12 Wyo. 458, 471–72, 76 P. 588, 590 (1904); and *Cosgriff Bros. v. Miller,* 10 Wyo. 190, 220–21, 68 P. 206, 211 (1902). *See England v. Hing,* 105 Ariz. 65, 459 P.2d 498, 501–02 (1969) (owners of large acreage ranch that is fenced around its exterior boundary whose cattle roam freely and graze on unfenced mining claims lying within the ranch's exterior fence not entitled to adverse possession title where "fence-out" doctrine prevails); *De Las Fuentes v. Macdonell,* 85 Tex. 132, 20 S.W. 43, 44 (1892) (same); and Jennifer E. Starr, Comment, *Casual and Designed Enclosures: How Texas Courts Determine Adverse Possession,* 44 Baylor L.Rev. 921 (1992).

6. In cases in which the adverse possession claimant rests its claim on the grazing of livestock on the disputed property, material facts include whether the property is suitable for grazing and pasturage, whether the grazing livestock were placed on the adverse claimant's own lands and then roamed freely or strayed onto the disputed property or whether the adverse claimant purposely drove its livestock onto the disputed property and kept them there each year during the full period of the growing season, whether the adverse claimant pastured its grazing livestock on the disputed property sporadically or for the full period of each growing season, whether the disputed property was separately enclosed with its own fence and the adverse claimant placed its grazing livestock within that fenced enclosure, and the number of such grazing livestock using the disputed property for the full period of each growing season. *See, e.g., Davis,* ¶ 11, 55 P.3d at 1271 (bench trial); *Hillard,* 888 P.2d at 1260–61 (bench trial); *Turner,* 769 P.2d at 368 (bench trial); *Rutar Farms,* 651 P.2d at 1132–34 (bench trial); *Farella v. Rumney,* 649 P.2d 185, 186–87 (Wyo.1982) (bench trial); *Shores,* 591 P.2d at 900–02 (bench trial); *and see McDonnold v. Weinacht,* 465 S.W.2d 136 (Tex.1971) (jury trial); *England v. Hing,* 105 Ariz. 65, 459 P.2d 498 (1969) (bench trial); *DeArman v. Surls,* 618 S.W.2d 88 (Tex.Civ.App.1981) (jury trial); *Wortham v. Nevins,* 383 S.W.2d 467 (Tex.Civ.App.1964) (bench trial); *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (1954) (bench trial).

[¶ 19] Considering the nature and extent of the material facts associated with the elements of a claim of adverse possession, this Court considers an adverse possession action to be "peculiarly factual in nature." *Farella,* 649 P.2d at 186; *Snell v. Ruppert,* 582 P.2d 916, 917 (Wyo.1978). In *Rutar Farms,* we noted that the trial court's forty findings of fact and seventeen conclusions of law demonstrated "a consideration of the complex and vigorously disputed factual issues and of the multiple principles of law" involved in an adverse possession action. 651 P.2d at 1137. We have recognized that in such actions "the possession must be 'with the intent' to assert such adverse claim against the true owner, thus the intention of the parties involved most often is controlling with doubtful situations to be submitted to the trier of facts. The intention may be established by words or acts." *Gray v. Fitzhugh,* 576 P.2d 88, 90 (Wyo.1978) (internal citations omitted); *accord, Rutar Farms,* 651 P.2d at 1135. We have maintained that "[t]he intent to assert an adverse claim must be established by objective evidence, that is there must be objective indications of an intent to adversely possess the land of another. Testimony as to the claimant's subjective intent does not suffice." *Ferguson v. Ferguson,* 739 P.2d 754, 757 (Wyo.1987). In those actions that by their nature are factually dependent, appellate review of a grant of summary judgment is subject to more exacting scrutiny. *Cornelius v. Powder River Energy Corp., Inc.,* 2007 WY 30, ¶ 10, 152 P.3d 387, 390 (Wyo.2007). Our case law is clear

that the elements of an adverse possession claim and of a prescriptive rights claim are quite similar. *See Boykin v. Carbon Cty. Bd. of Comm'rs*, 2005 WY 158, ¶¶ 14–15, 124 P.3d 677, 681–82 (Wyo.2005); *A.B. Cattle Co. v. Forgey Ranches, Inc.*, 943 P.2d 1184, 1188–89 (Wyo.1997); *Mueller v. Hoblyn*, 887 P.2d 500, 507 (Wyo.1994); *Koontz v. Town of Superior*, 746 P.2d 1264, 1267–68 (Wyo.1987); *Shumway v. Tom Sanford, Inc.*, 637 P.2d 666, 669 (Wyo.1981); *Gray*, 576 P.2d at 90–91; and William G. Ackerman and Shane T. Johnson, Comment, *Outlaws of the Past: A Western Perspective on Prescription and Adverse Possession*, 31 Land & Water L.Rev. 79, 86–89 (1996) (describing the similarities and differences of the two claims). Such claims are not favored in the law. *A.B. Cattle Co.*, 943 P.2d at 1189; *Mueller*, 887 P.2d at 507; *Prazma v. Kaehne*, 768 P.2d 586, 589 (Wyo.1989).

[¶ 20] For the above and foregoing reasons, our appellate review of the district court's grant of summary judgment in this case shall proceed with more exacting scrutiny.

## DISCUSSION

[¶ 21] The heart of Robinson's complaint is the averment that it "and its predecessors in interest have had hostile, actual, open, notorious, exclusive, and continuous possession of the property under a claim of right for more than ten (10) years last past. During all of such time, plaintiff and its predecessors have enclosed the property with fence and have grazed their livestock on the property." Braunstein's answer of general denial had the effect of putting every material allegation in that complaint in dispute. W.R.C.P. 8(b); *State Bank of Wheatland v. Bagley Bros., et al.*, 44 Wyo. 456, 13 P.2d 564 (1932); *see also Grimsley v. Estate of Spencer*, 206 Mont. 184, 670 P.2d 85, 93 (1983). With the issues thus joined, it became Robinson's burden to prove those elements of adverse possession with admissible

evidence of specific facts. When Robinson filed its motion for summary judgment, it was required to submit evidentiary material that was as carefully tailored and professionally correct as any evidence which was admissible to the court at the time of trial. We will now examine and evaluate Robinson's evidentiary materials according to that requirement in light of our previous identification of the material facts associated with the elements of an adverse possession claim.[1]

**1. Affidavit of Alden C. Robinson dated June 23, 2006**

[¶ 22] This affidavit states:

1. I am one of the general partners of ROBINSON FAMILY LIMITED PARTNERSHIP LLP.

2. I was born November 9, 1923 in Moorcroft, Wyoming.

3. I grew up on the family ranch in Crook County. I graduated from Moorcroft high school. While growing up on the family ranch, I helped with all ranching work, including fencing and moving and working livestock. I lived continuously on the family ranch until 1994, when my wife, Effie, and I moved to the town of Moorcroft, Wyoming. The Moorcroft city limits border our family ranch.

4. The family ranch lands are adjacent to the property described in the complaint in this matter (the "property"). While I was growing up on the family ranch and helping with the ranch work, we openly claimed the property as our own and continuously possessed and used it as our own by enclosing the property with our fences and grazing our livestock on it. We did not allow anyone else to use the property. Our claim to the property, and our possession and use of it, were known in the community.

5. In 1957, my brother, Lucian H. Robinson, Jr., and I purchased the family ranch lands from our father's estate. My broth-

---

1. That Braunstein did not move to strike Robinson's evidentiary materials submitted in support of its summary judgment motion does not mean that this Court would consider these materials as though they were legally sufficient to meet the requirements of W.R.C.P. 56 and our summary judgment case law. A movant is not relieved of meeting those requirements in the absence of a non-movant's objections and motion to strike. *Keller v. Anderson*, 554 P.2d 1253, 1262 (Wyo. 1976).

er and I continued to openly claim the property as our own, and continuously possessed and used it as our own by enclosing the property with our fences and grazing our livestock on it. We did not allow anyone else to use the property. Our claim to the property, and our possession and use of it, were known in the community.

6. I acquired my brother's one-half (½) of the family ranch lands in 1961. I continued openly claiming the property as my own, and continuously possessed and used it as my own by enclosing the property with my fences and grazing my livestock on it. I did not allow anyone else to use the property. My claim to the property, and my possession and use of it, were known in the community.

7. In 1992, my wife, Effie, and I, conveyed title to the family ranch lands to our revocable trusts. Through our trusts, we continued openly claiming the property as our own, and continuously possessed and used it as our own by enclosing the property with our fences and grazing our livestock on it. We did not allow anyone else to use the property. Our claim to the property, and our possession and use of it, were known in the community.

8. Our family formed the Robinson Family Limited Partnership LLP (the "partnership") in November 2001, and my wife, Effie, and I conveyed the family ranch lands to the partnership. The partnership continued openly claiming the property as its own, and continuously possessed and used it as its own by enclosing the property with its fences and grazing its livestock on it. The partnership did not allow anyone else to use the property. The partnership's claim to the property, and its possession and use of the property, were known in the community.

9. When the family ranch lands were conveyed, it was always my intent to include all the lands we were possessing, using, and claiming as our own, including the property. Any omission of the description of the property from the conveyances was inadvertent.

10. When paying the real estate taxes on the family ranch lands, it was always my intent to pay the taxes for all the lands we were possessing, using, and claiming as our own, including the property. The total yearly real estate tax we pay on the family ranch lands is approximately $6467. On information and belief, the yearly real estate tax on the property is approximately $140. Any failure on our part to pay the real estate taxes on the property was inadvertent.

■■■ [¶ 23] This affidavit is insufficient in several respects. In paragraphs 4 through 8, the affiant states that for more than ten years "we" (paragraph 4), "my brother and I" (paragraph 5), "I" (paragraph 6), "our trusts" (paragraph 7), and "the partnership" (paragraph 8)

> openly claim[ed] the [disputed] property as our own, and continuously possessed and used it as our own by enclosing the [disputed] property with our fences and grazing our livestock on it. We did not allow anyone else to use the [disputed] property. Our claim to the [disputed] property, and our possession and use of it, were known in the community.

The substance of these paragraphs is virtually identical to and no more than a restatement of the principal allegation of paragraph four of Robinson's complaint:

> Plaintiff and its predecessors in interest have had hostile, actual, open, notorious, exclusive, and continuous possession of the property under a claim of right for more than ten (10) years last past. During all of such time, plaintiff and its predecessors have enclosed the property with fence and have grazed their livestock on the property.

These affidavit paragraphs are only categorical assertions of ultimate facts without specific supporting facts. They are mere statements of the elements of an adverse possession claim, without any evidence of the specific material facts associated with those elements. For example, these paragraphs contain no specific facts describing the location, quality, and purpose (casual or intentional) of the fencing and who built it. There are no specific facts informing the

Court whether the fencing surrounds only the exterior of the Robinson family ranch lands within which is located the unfenced disputed property or whether Robinson separately enclosed the disputed property within a fence. There are no specific facts describing the geographical location of the Robinson family ranch lands in relation to the disputed property. There are no specific facts informing us of the acreage of the Robinson family ranch lands. There are no specific facts explaining and describing in what ways the affiant or his family members did not allow anyone else to use the disputed property—what did they do and when. With respect to grazing livestock, there are no specific facts concerning the type and number of livestock, whether that livestock was placed on the Robinson family ranch lands and allowed to roam and stray freely onto the disputed property or whether that livestock was intentionally driven to, placed on, and purposely kept on the disputed property. There are no specific facts stating whether the grazing livestock were purposely placed on the disputed property each year during the full period of the growing season. The last sentence in each of the paragraphs 4 through 8, "our claim to the property, and our possession and use of it, were known in the community," is inadmissible subjective belief and opinion having no factual basis.

[¶ 24] In paragraph 9, the affiant refers to the conveyances of the Robinson family ranch lands but does not state that the disputed property was included in those conveyances. As we noted earlier, the failure of an adverse possession claimant and its ancestors to execute any title instruments affecting the disputed property, although they did execute title instruments affecting their deeded land, is a fact to be weighed by the trier of fact along with the other circumstances in the case. Affiant's statements about his intent to include the disputed property in conveyances of the family ranch lands and about inadvertent omission of the disputed property's description in such conveyances are inadmissible self-serving subjective opinion.

[¶ 25] In paragraph 10, the affiant refers to the payment of real estate taxes on the Robinson family ranch lands, but does not state that he paid the real estate taxes on the disputed property. As we noted earlier, an adverse possession claimant's failure to pay the real estate taxes on the disputed property, while not conclusive, is a fact to be weighed along with the other circumstances in the case and tends to weaken a claim of ownership by adverse possession. Affiant's statements about his intent to pay the taxes on the disputed property and Robinson's "inadvertent" failure to pay those taxes are inadmissible self-serving subjective opinion.

[¶ 26] We hold that Alden C. Robinson's affidavit fails to show the absence of genuine issues of material fact related to Robinson's adverse possession claim.

## 2. Affidavit of Justen T. Robinson dated June 23, 2006

[¶ 27] This affidavit states:

1. I am one of the general partners of ROBINSON FAMILY LIMITED PARTNERSHIP LLP.

2. I was born December 11, 1964 in Gillette, Wyoming.

3. I grew up on the family ranch in Crook County. I graduated from Moorcroft high school. While growing up on the family ranch, I helped with all ranching work, including fencing and moving and working livestock. I have lived continuously on the family ranch, except for the time I attended college during the 1983–84 and 1984–85 school years.

4. The family ranch lands are adjacent to the property described in the complaint in this matter (the "property"). While I was growing up on the family ranch and helping with the ranch work, we openly claimed the property as our own and continuously possessed and used it as our own by enclosing the property with our fences and grazing our livestock on it. We did not allow anyone else to use the property, other than letting our hired man run his cows on it. Our claim to the property, and our possession and use of it, were known in the community.

5. Our family formed the Robinson Family Limited Partnership LLP (the "partnership") in November 2001, and my parents, Alden C. Robinson and Effie B. Robinson, conveyed the family ranch lands to the partnership. The partnership continued openly claiming the property as its own, and continuously possessed and used it as its own by enclosing the property with its fences and grazing its livestock on it. The partnership did not allow anyone else to use the property. The partnership's claim to the property, and its possession and use of the property, were known in the community.

6. When the family ranch lands were conveyed, it was always our intent to include all the lands we were possessing, using, and claiming as our own, including the property. Any omission of the description of the property from the conveyances was inadvertent.

7. When paying the real estate taxes on the family ranch lands, it was always our intent to pay the taxes for all the lands we were possessing, using, and claiming as our own, including the property. The total yearly real estate tax we pay on the family ranch lands is approximately $6,467.00. On information and belief, the yearly real estate tax on the property is approximately $140. Any failure on our part to pay the real estate taxes on the property was inadvertent.

[¶ 28] This affidavit, identical in most respects to the affidavit of Alden C. Robinson, is, like that one, insufficient for the same reasons. It, too, fails to show the absence of genuine issues of material fact related to Robinson's adverse possession claim.

### 3. Justen T. Robinson's Second Affidavit dated November 13, 2007

 [¶ 29] This affidavit states:

1. I am one of the general partners of ROBINSON FAMILY LIMITED PARTNERSHIP LLP (the "partnership").

2. Since at least as far back as 1980, there has never been any production of oil or gas from the property described in the complaint in this matter (the "property").

3. The partnership caused appraisals of the family ranch lands to be conducted in 2001 and 2006 for estate planning purposes. The property is not included in the appraisals, because the appraiser used record title to determine the descriptions of the lands to be appraised.

That there has been no oil or gas production from the disputed property since at least as far back as 1980 does not show the absence of any genuine issue of material fact associated with the elements of adverse possession. Without more factual context, this statement has no legal significance.

 [¶ 30] With respect to the family ranch land appraisals in 2001 and 2006, the affidavit is inadequate for several reasons. It fails to identify the appraiser, fails to state specific facts concerning what that unidentified appraiser did and used; and it states a conclusion without any supporting specific facts. The affiant did not attach sworn or certified copies of the appraisals or record title referred to in the affidavit. Importantly, the affiant admits that the disputed property is not included in the appraisals of the family ranch lands, which admission is a fact to be considered along with the other facts and circumstances in the case; in this respect, it joins Robinson's failures to pay taxes on the disputed property and to include the disputed property in title instruments relating to its family ranch lands as material facts that tend to weaken a claim of ownership by adverse possession.

### 4. Affidavit of Donald D. Zacher dated October 24, 2007

 [¶ 31] This affidavit states:

1. I am a licensed abstracter in the State of South Dakota. I have been licensed in South Dakota since October 7, 1999.

2. I have 11 years experience researching and examining real property title records.

3. I am not a licensed abstracter in the State of Wyoming; however, I have three years experience researching and examining real property title records in Wyoming, including Crook County. I research and examine real property title records in Crook County on a regular basis.

4. The real property that is the subject of the complaint in this matter is described as follows (the "property"):

*Township 49 North, Range 67 West, 6th P.M.:*

**Section 2: E½SW¼.**

**Section 11: NW¼.**

**Section 14: E½NE¼; and S½ (less State Highway of 24.2 acres).**

5. I have examined the title records regarding the property in the Crook County Clerk's Office for the time period from July 8, 1980 through March 4, 2005, which is the date the Notice of Lis Pendens was recorded in this action. The following are the only documents of record during that time period with the names of Melvin A. Braunstein, Elsie L. Braunstein, or any other person named Braunstein, on them:

a. A June 9, 1980 Oil and Gas Lease granted by Melvin A. Braunstein and Elsie Braunstein to L R Company, with a five year term, recorded July 8, 1980 in Book 177 Photos, Page 23. A copy is attached and by this reference incorporated herein.

b. A March 1, 1966 Right–of–Way Easement granted by E.L. Braunstein to Tri–County Electric Association, recorded May 29, 1981, in Book 184 Photos, Page 660. A copy is attached and by this reference incorporated herein.

c. An August 8, 1995 Telephone Company Right–of–Way Easement granted by Melvin A. Braunstein and Elsie L. Braunstein to R T Communications, Inc., recorded February 11, 1997 in Book 349 Photos, Page 197. A copy is attached and by this reference incorporated herein.

[¶ 32] The affiant fails to state the date on which he examined the title records to which he refers. More importantly, although the affiant has attached the referenced documents to his affidavit, those documents are not sworn or certified copies as required by W.R.C.P. 56(e).

5. **June 9, 1976, Quitclaim Deed conveying the disputed property to Melvin A. Braunstein and Elsie L. Braunstein**

[¶ 33] Robinson included this document in its summary judgment motion submissions, but this document is not a sworn or certified copy as required by W.R.C.P. 56(e), and no witness introduced it into the record.

6. **Defendant Elsie L. Braunstein's Answers to Plaintiff's First Interrogatories**

[¶ 34] In Braunstein's answers she testified in pertinent part that she and her husband did not cause fencing to be done on the disputed property (answer to Interrogatory No. 17); they last ran livestock or caused livestock to be run on the disputed property in March of 2005 (answer to Interrogatory No. 18); no one has ever resided on the disputed property (answer to Interrogatory No. 19); she has never traveled to and viewed the disputed property (answer to Interrogatory No. 20); her husband never traveled to and viewed the property (answer to Interrogatory No. 21); and her allegation in paragraph 3 of her counterclaim that plaintiff "keeps [you] ou[t] of possession" of the property is based on "[t]he plaintiff sued me alleging that the plaintiff owns the property and asking the court to enjoin me from entering the property" (answer to Interrogatory No. 22).

[¶ 35] We find nothing in these answers that shows the absence of any genuine issue of material fact associated with the elements of Robinson's adverse possession claim.

7. **The Robinson conveyances of the family ranch lands surrounding the property**

[¶ 36] Robinson included these documents in its summary judgment motion submissions, but these documents are not sworn or certified copies as required by W.R.C.P. 56(e), and no witness has introduced them into the record.

8. **Elsie L. Braunstein's deposition**

[¶ 37] In Robinson's memorandum in support of its summary judgment motion,

there is only limited reference to Braunstein's deposition:

Elsie L. Braunstein has never talked to or corresponded with Alden Robinson, and she does not know any members of the Robinson family. A.53, p. 17, lns. 22–25, and p. 18, lns. 7–9, and lns. 18–20. Likewise, Melvin A. Braunstein did not know any members of the Robinson family. A.54, p. 19, lns. 24–25, and p. 20, lns. 1–2.

*In December 2004, defendant Elsie L. Braunstein caused 50 to 70 horses to be turned out on the property and adjacent property owned by Robinson.* [no citation to Braunstein deposition] Prior to this, the Braunsteins had never used the property, and they had never rented the surface to anyone. A.56, p. 30, lns. 8–12; A.53, p. 17, lns. 5–9.

(Emphasis added.) With respect to the underlined statement, we note that Robinson does not cite to Braunstein's deposition, and we have carefully read that deposition and find no such testimony. Because we examine Braunstein's deposition testimony from the vantage point most favorable to her, giving her the benefit of all favorable inferences which may fairly be drawn from her testimony, we may reasonably infer that no member of the Robinson family, either verbally or in writing, ever informed her or her late husband that Robinson was adversely claiming her property until it filed the present action. We find nothing in Braunstein's deposition that shows the absence of any genuine issue of material fact associated with the elements of Robinson's adverse possession claim.

[¶ 38] We have completed our examination and evaluation of Robinson's evidentiary materials and have found most of them legally insufficient under the requirements of W.R.C.P. 56 and our summary judgment case law and have found that taken together they fail to show the absence of any genuine issue of material fact associated with the elements of Robinson's adverse possession claim. Because Robinson has failed to make a prima facie case of adverse possession, the presumption in favor of the record title holder Braunstein has not been rebutted. Consequently, Braunstein had no obligation to counter Robinson's summary judgment motion with materials beyond the pleadings. We reverse the district court's order granting summary judgment to Robinson and remand for further proceedings consistent with this opinion.